26 C.C.P.A.(Patents)

### In re EWALD.

**Patent Appeal No. 4171.**

Court of Customs and Patent Appeals.
June 19, 1939.

Cox & Moore, of Chicago, Ill. (Ballard Moore, Curtis F. Prangley, and Richard R. Trexler, all of Chicago, Ill., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 15, 16, and 22 in appellant's application for a patent for an alleged invention relating to improvements in fruit splitting apparatus.

Claims 15 and 22 are illustrative of the appealed claims. They read:

"15. Fruit splitting apparatus comprising fruit severing means including means providing opposed surfaces disposed in the plane of the opposed surfaces of the fruit severing means and against which the cut sections of the fruit are adapted to lie after the cutting operation, means for conveying a whole fruit into contact with the cutting means to sever the fruit and to convey the severed portions onto the said opposed surfaces, each of said opposed surfaces having a plurality of countersunk portions, the total area of the countersunk portions being relatively great as compared to those portions of the opposed surfaces which lie in the plane of the severing means whereby to prevent the formation of a vacuum between the said opposed surfaces and the cut face of the fruit so as to prevent sticking."

"22. In a fruit-treating apparatus, the combination of a frame, fruit-conveying means adapted to travel along a horizontal pathway at a predetermined level, from a fruit-feeding station to a spreader station, fruit-severing means disposed in the path of the conveying means for severing the fruit into sections, fruit-spreading means comprising opposed extended surfaces shiftable to one position to lie substantially vertically in the path of said conveying means to receive the severed sections thereon, movable fruit-holding means adapted to be moved into position adjacent the fruit-spreading means for receiving the fruit sections from said spreading means, and means carried by each spreading means adapted to contact with each fruit section as each fruit section is moved onto said spreading means for preventing each fruit section from shifting downwardly while said spreaders are in vertical position."

The references are: Eldridge, 1,512,410, Oct. 21, 1924; Dorsey, 1,548,192, Aug. 4, 1925.

The apparatus defined by the appealed claims is that particular part of a fruit treating machine called a "splitting device."

As stated in appellant's application, the apparatus defined by the appealed claims is so designed and arranged that it will "engage the flat faces of fruit being halved in a manner preventing lateral displacement of such halves during the remaining splitting and subsequent operations thereon."

We quote the Primary Examiner's description of the apparatus as follows: "The subject of the claims is a device for halving a whole pear and automatically delivering the halves to individual cups with the cut face facing upwardly. More specifically they are directed to the specific structure of the spreadable wings which deliver the halves to the cups. In operating the device, a pear from which the stem end has been bobbed is delivered directly beneath the carriage * * * and clamping jaws * * * and raised into position between the jaws. The jaws then move together and clamp the fruit * * *. The carriage then moves along the bars * * * and conveys the fruit through the vertical halving knife * * * and onto the vertically positioned abutting wings

* * *. The wings carry fins * * * on which the respective halves are impaled. The face of the wings are grooved longitudinally * * *, and transversely * * *. After delivering the halves onto the wings the jaws open and the carriage returns to initial position. The wings with the halves impaled thereon spread apart to a horizontal plane * * * and deposit their halves into * * * cups * * *."

The reference patents need not be described in detail, as the issues involve only the countersunk portions or grooves of the spreading wings, as defined in claims 15 and 16, and means carried by the spreading wings for preventing the halves of the fruit "from shifting downwardly while said spreaders are in vertical position," as called for in claim 22.

The patent to Eldridge relates to a fruit pitting machine, and the structure disclosed is similar to that defined by appellant in appealed claims 15 and 16, except that it does not disclose the countersunk portions on the outer surfaces of the spreading wings.

It is contended by counsel for appellant that the patent to Eldridge does not disclose the element or means carried by the spreading wings to prevent the fruit sections from shifting downwardly, as defined in appealed claim 22.

The patent to Dorsey relates to a vegetable slicer, and discloses "longitudinally extending grooves * * * between which are ridges * * * upon which the fruit or vegetable * * * being sliced rides." Relative to the longitudinal grooves on the spreader wings, the patentee states that they "serve both to reduce the friction of operation, *and to admit air beneath the unsliced part of the vegetable or fruit, thus preventing it from sticking.*" (Italics ours.)

As to claims 15 and 16, the tribunals of the Patent Office concurred in holding that it would not involve invention to provide the spreader plates, disclosed in the patent to Eldridge, with a plurality of countersunk portions to prevent the formation of a vacuum between the opposed surfaces of the plates and the cut face of the fruit so as to prevent sticking, in view of the countersunk portions in the spreader wings disclosed in the patent to Dorsey.

Relative to the means carried by the spreader plates to prevent the fruit sections from shifting downwardly while the spreader plates are in vertical position, called for in appealed claim 22, the Primary Examiner held that the patent to Eldridge discloses means carried by the patentee's spreader plates to prevent the fruit sections from moving downwardly as they are moved onto the spreader plates and while the latter are in vertical position.

In its decision relative to the apparatus defined in claims 15 and 16, the Board of Appeals said:

"The examiner has held with respect to claims 15 and 16 that it would not involve invention to place vacuum-breaking grooves on the fruit separator blades 24 and 25 of Eldridge, particularly in view of the fact that grooves on the beds of vegetable slicers are old, as shown by Dorsey.

"Appellant argues that in Eldridge it would be undesirable to break the suction as the fruit portions should be held in vertical position. He also contends that inasmuch as the cups * * * move the fruit portions longitudinally of the blades * * *, the suction-breaking grooves are not needed.

"We are not convinced that it might not be desirable to place grooves on the spreading members of Eldridge as we believe that these members may start to operate almost before the fruit portions have moved away from the upper cup members * * *. Perhaps it is not evident that these grooves may be needed. We believe that it would not require invention to provide them if it was found that the fruit had a tendency to stick to the blades. It should be noted that the claims before us are not limited to appellant's particular type of machine and we do not consider that he should be granted claims which might interfere with what we regard as an obvious modification of the Eldridge structure."

As to claim 22, the board stated:

"* * * The feature of this claim which appellant relies upon is to be found in the last clause. It relates to the means for preventing each fruit section from shifting downwardly while the spreaders are in vertical position. Eldridge shows means 31 for preventing the fruit sections from moving downwardly but the fruit sections will move downwardly somewhat before they rest against the shelves * * *.

"We believe, in a sense, that the fruit takes a rather diagonal downward course as it is finally deposited against the blades

\* \* \* of Eldridge. Even if this is a somewhat forced construction of the language of the claim, however, we consider that Eldridge should be permitted, if he finds it desirable, to elevate the shelves \* \* \* and provide an arrangement whereby the cups \* \* \* will move upwardly as they approach the spreading members so that it is unnecessary for the fruit sections to be lowered. Again we are taking the position that we believe appellant should not be allowed claims which would read upon modifications of structure so different from his own and which, we consider, cannot be regarded as a patentable advance, particularly when set forth so broadly that the claim will read upon both types of machines."

It is argued by counsel for appellant that it is impossible to provide the spreader wings, disclosed in the patent to Eldridge, with countersunk portions without consequent marring of the fruit, and that to provide the Eldridge spreader wings "with grooves of sufficient area to prevent the formation of a vacuum between the outer surfaces of the spreader plates and the cut surfaces of the pieces of half peach" would make the Eldridge device inoperative.

The issue is not whether providing the spreader wings of the Eldridge structure with countersunk portions, clearly suggested by Dorsey, would make the Eldridge device inoperative, but rather whether in view of the Eldridge disclosure and the disclosure in the Dorsey patent it would require invention to "bring about the arrangement shown" in appellant's device. In re Dubilier, 62 F.2d 374, 20 C.C.P.A., Patents, 809; In re Nielsen, 80 F.2d 71, 23 C.C.P.A., Patents 783.

We are in agreement with the tribunals of the Patent Office that in view of the disclosures in the references it would not involve invention to produce the structure defined in appealed claims 15 and 16.

It will be observed that as to the limitation contained in claim 22, that is, means carried by the spreader wings adapted to contact the fruit sections as they are moved onto the spreader wings for preventing the fruit sections from shifting downwardly while the wings are in vertical position, the Board of Appeals in its decision conceded that such element is not disclosed in the Eldridge patent, stating that Eldridge discloses "means 31 [horizontal shoulders carried by the spreader plates] for preventing the fruit sections from moving downwardly *but the fruit sections will move downwardly somewhat before they rest against the shelves 31.* We believe, in a sense, that the fruit takes a rather diagonal downward course as it is finally deposited against the blades 24, 25 of Eldridge." (Italics ours.) The board then suggested in its decision that the patentee "Eldridge should be permitted, if he finds it desirable, to elevate the shelves 31 and provide an arrangement whereby the cups 2 will move upwardly as they approach the spreading members *so that it is unnecessary for the fruit sections to be lowered";* and stated that it believed appellant "should not be allowed claims which would read upon *modifications of structure so different from his own* and which, we consider, cannot be regarded as a patentable advance, *particularly when set forth so broadly that the claim will read upon both types of machines."* (Italics ours.)

We are in agreement with the Board of Appeals that the means carried by the spreader plates in the Eldridge structure do not prevent the fruit sections from shifting downwardly *as they are moved onto the spreader plates* and while the latter are in vertical position. Furthermore, there is no suggestion in the patent to Eldridge of providing the spreader plates with means to prevent the fruit sections from moving downwardly *as they move onto the spreader plates.* The board evidently recognized that fact and suggested a modification of the Eldridge structure, in which modified structure, the board stated, the spreader plates could be provided with means to prevent the fruit sections from moving downwardly *as they are moved onto the spreader plates,* and then held that appealed claim 22 read on the modified Eldridge structure.

The patent to Eldridge neither discloses nor suggests the use of means on the spreader plates to prevent the fruit sections from moving downwardly *as they are moved onto the spreader plates* and while the latter are in vertical position, nor are we convinced that it would be obvious to one skilled in the art to so modify the Eldridge device that it would operate as does appellant's. Accordingly, we must hold that claim 22 was improperly rejected on the Eldridge patent.

For the reasons stated, the decision of the Board of Appeals is modified, being

affirmed as to claims 15 and 16, and reversed as to claim 22.