### Application of MERKLE.

Patent Appeal No. 5037.

Court of Customs and Patent Appeals.

July 3, 1945.

John O. Seifert, of New York City (John J. Darby, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

From a decision of the Board of Appeals of the United States Patent Office affirm-

ing the action of the examiner in rejecting claims 11, 12, and 13 of appellant's application for a patent for a fibrous paper container, such as is adapted for packaging milk, appellant has here appealed.

Claim 12 is illustrative of the appealed subject matter and follows:

"12. A container of fibrous material, comprising a body having the marginal end portions folded inwardly and free of the inner side of the body, and closures of dish form for the ends of the body having the rim flanged laterally in the direction of and to an extent greater than the depth of the dish portion and folded outwardly and reversely upon itself substantially to U-shape in cross section, and said closures inserted into the ends of the body with the laterally extending portion of the flange engaging and adhesively united to the folded end portions of the body and the outwardly folded portion of the flange engaging and adhesively united to the outer side of the body providing a flexible connection between the body and closures of the container, and the dish portion of the closure disposed within the ends of the body."

The claims were rejected upon the patents to:

Bogert, 1,293,316, February 4, 1919.

Sherwood et al., 2,146,861, February 14, 1939.

Carew, 2,274,037, February 24, 1942.

Under modern commercial practices milk is transported sometimes long distances in sealed paper containers, and by reason of the constant vibration in transportation and the piling up of the containers and the weight of the contents, the surging of the liquid in the containers frequently cause leaks at top or bottom. This is particularly true with milk which is hauled at all seasons of the year and is packaged in containers which are not completely filled so as to allow room for expansion by freezing, etc.

The applicant, evidently an expert in this art, recognized the difficulty and considered means of overcoming the problem presented. The record shows that his problem was one of making a close and strong adherence of the ends of the containers to the body thereof, and at the same time by such joining of the two elements and of the shaping of the bottom and top so as to permit a reasonable expansion without unnecessarily weakening the structure.

The applicant accomplished these purposes by an improvement, which is shown by a reproduced and enlarged scale drawing of one end portion of his container, upon which has been noted the indicia not shown in the small scale application drawing, which is so indistinct as to be not readily understood. We here reproduce the enlarged scale drawing submitted by appellant:

Appellant, in his brief, explains the drawing in the following language:

"The claimed invention relates to containers made of fibrous material, such as paper, and adapted for the packaging and distributing of liquids therein, comprising a body B, shown as of rectangular form in cross section, having the marginal portions at the ends folded inwardly and said folded portions being free of the inner side or surface of the body, as at 6 in Figures 1 and 3 of the drawing (R. 9) and opposite page 2, and closures for the ends of the body, said closures being of dish form, in that the center portion of each closure is depressed, as at 14, and the rim or marginal portion of the closure is flanged laterally in the direction of the depressed portion, as at 7, and the flange 7 reversely folded upon itself, as at 7', to substantially U-shape in cross section.

"A closure is inserted into one end of the container body with its laterally extending and reversely folded flange 7, 7' engaged over the inwardly folded end portion 6 with the laterally extending portion 7 of the flange contiguous to the outer surface of the folded end portion 6 of the container body and the reversely folded portion 7' contiguous to the outer surface of the container body.

"The closure flange 7, 7' is secured or adhesively united to the outer surfaces of the folded end portion 6 and the container body B, as by a thermoplastic adhesive on the inner surface of the closure flange 7, 7'. Adhesion is obtained by applying heat and pressure to the flange 7, 7', as shown at 10, 11, 11' in Figure 1 and opposite page 2, thus providing a flexible connection between the container body and the end closure. After the container is filled with the contents to be dispensed therein, a similar closure is engaged in the opposite end of the container body with the flange 7, 7' engaging over the folded end of the container body and adhesively secured to the outer surface of the inwardly folded end portion and outer side of the container body under heat and pressure."

We quote the following from the examiner's decision, which states clearly his grounds of rejection:

"The examiner holds that claims 11, 12 and 13 are unpatentable over Sherwood et al. in view of either Carew or Bogert. There would be no invention in folding over the ends of the container of Sherwood et al. as taught by either Carew or Bogert.

"The Examiner also holds that claims 11, 12 and 13 are unpatentable over Bogert in view of Sherwood et al. There would be no invention in applying adhesive to the end of the container of Bogert as taught at 19, Fig. 3, of Sherwood et al. and in the use of a container having at both ends a similar end structure.

"Claim 11 does not include the use of an adhesive. Insofar as the end structure as covered by this claim, it is held to be fully met in either Carew or Bogert. The recital of opposite ends is merely a duplication of the structure of either of these patents."

The board briefly affirmed the holding of the examiner and, in part, said:

"The examiner holds the appealed claims unpatentable over Sherwood, which shows the general pattern of joint, in view of Carew or Bogert, which show the idea of strengthening the end of the tubular container by folding it over on itself. The use of adhesive at and inside the joint is a conventional expedient, as shown by Sherwood. It is mere duplication to construct both ends of a cylindrical container in the same way.

"Applicant has fully summarized the disclosures of the references and has pointed out what they do not show. We are not satisfied that applicant's claims define an invention over the state of the art cited, and cannot see that the examiner's position is in error.

The Sherwood patent is for a container suitable for packaging oils, greases, etc., from which the top lid may be readily moved. The invention comprehends the use of a plurality of plies of parchment or other thin lining material, and, as pointed out by the examiner, has a centrally depressed portion such as that of appellant. The edge of the lid closure is formed with a flange folded outwardly and reversely to U-shape in cross section and has a thermoplastic coating on the inner surface of such U-shaped portion. In respect to the end closure having the central depression and the same being folded outwardly to extend on the outside of the body portion of the container, it resembles the structure of appellant, but it will be noted that the appealed claims call for a structure in which the body portion B at the ends is bent inwardly. The end of Sherwood's body portion is incapable of bending inwardly since it is constructed in rigid form of plies of material. The ends of the container body are coated with rubber latex coating to prevent oil permeating. This inward bending feature of the body, and the coating with latex, is important in view of matters later herein referred to.

Bogert bends the ends of his wall portion inwardly and fits the lid over such bent portion.

Carew also folds the end of his container inwardly, but it is so designed in connection with the structure of the lid of same that the inner portion acts as a spring stated to form a good seal, and it is obvious that such an arrangement will facilitate the removal of the cap or top when the contents of the container are desired. Carew also shows the use of a so-called flange formed by separating a portion of the side wall and permitting the outer portion of the cap to protrude downwardly into the said flange.

As to the first ground of rejection assigned by the examiner as to all the claims that there would be no invention in folding the ends of the container of Sherwood, as taught by either Carew or Bogert, it has already been observed that there is nothing about the Sherwood structure or the structure of either of the other patents that suggests that the top and bot-

tom of the body of the Sherwood container could be folded in. In fact, it could not be so folded.

It will also be noticed that in appellant's device there is not only a depressed bottom and top, but that there is a reversed folded portion 7 so provided to give additional expansion room and to form a portion of the wall around the inwardly bent ends of the walls. It is easy to see, from a study of appellant's specification, that in his structure he has solved a problem which was not solved, nor attempted to be solved in either one of the references.

Clearly, appellant's device is a great improvement in the container art, and we think there is nothing in the references to suggest doing what appellant has done to solve the problem which appellant has solved.

This is not merely a case of combining the good qualities of three patents into one and obtaining the benefit of whatever good qualities were disclosed therein, but as we view it appellant has not only embraced in his structure some of the features of the references, but he has done it in such a way and made such modifications of old devices as to produce a new and useful result. None of the references mentioned herein attempted to bring about the resiliency and at the same time retain the strength in the container which appellant here has disclosed and emphasized.

It will be noticed by examining the enlarged drawing reproduced herein that there is no adhesive between the inturned portions of the body, that the adhesive is on the outside of the wall portion and on the inside of the closure portion, and that resiliency is afforded by this construction.

Bogert's structure shows no such intended resiliency, since his inwardly bent portion of the body is secured to the body to form the binding edge, and no resiliency except what might be desired for opening the container was sought.

The second ground of rejection on the part of the examiner, as before stated, is that there would be no invention in applying adhesive to the end of the container of Bogert as is taught by Sherwood.

We think our discussion above as to the nature of the structure makes it sufficiently clear that we are not in agreement with the examiner's viewpoint in this last stated ground of rejection.

It is pointed out by the examiner that claim 11 does not include an adhesive securing the folded end of the container body to the end portion. The claim requires that it be "secured to the inwardly folded end." In other words, claim 11 is broader than claims 12 and 13 insofar as the last two require that the inwardly bent end portion should be *adhesively* connected to the closure.

The adhesive feature of the two claims is not the element which lends patentability to them. Since we think claims 12 and 13 are allowable, we also conclude that claim 11 is allowable and will afford more adequate patent protection, since the adhesive feature might in some way be avoided by securing the end in some other manner.

The Solicitor for the Patent Office has not suggested that the features of the references relied upon by the examiner are the same as those that have been combined into appellant's structure. He states that the question "to be determined is whether it was invention to make the substitution with such physical changes as would be a normal way of making the substitute." This, of course, is the proper way to approach the question. Does the prior art suggest doing what appellant has done? Does it suggest the modification? Is there anything in the prior art that would suggest to anyone skilled in the container art how he could modify the references and consolidate them and produce his article so as to solve the problem upon which he was working?

This is one of the cases where, as was stated in Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S. Ct. 444, 447, 55 L.Ed. 527, after one sees the improvement it is a "matter of wonder" how it so long "eluded the search of the discoverer."

A case in point with the law involved in the instant appeal, we think, is In re Edwards, 124 F.2d 203, 29 C.C.P.A.(Patents) 771. Also see In re Quartz, 90 F.2d 255, 24 C.C.P.A.(Patents) 1180.

It follows from the foregoing that the decision of the Board of Appeals affirming that of the examiner in rejecting claims 11, 12, and 13 of appellant's application should be and is reversed.

Reversed.