36 C.C.P.A.(Patents)

### Application of SCHRAMM.

### Patent Appeals No. 5537.

United States Court of Customs and Patent Appeals.

Feb. 1, 1949.

572

Frederic B. Schramm, pro se.

W. W. Cochran, of Washington, D. C.
(E. L. Reynolds, of Washington, D. C., of
counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and
HATFIELD, JACKSON, O'CONNELL,
and JOHNSON, Judges.

HATFIELD, Judge.

This is an appeal from the decision
of the Board of Appeals of the United
States Patent Office affirming the decision
of the Primary Examiner rejecting claims
7 to 10, inclusive, and 13 in appellant's ap-
plication for a patent for a control sys-
tem for heating means.

Claims 1 to 6, inclusive, 12, 14, and 15
in appellant's application were allowed
by the Primary Examiner.

Claims 7 and 10 are representative of the
appealed claims. They read:

"7. An energy distribution system com-
prising an energy source, an energy in-
tensity responsive device for controlling the
same having 'on' and 'off' positions, an
energy dissipator with a connection to the
said energy source, a second energy in-
tensity responsive device, a normally open
energy control valve in the connection
to the said energy dissipator, a valve
closer, an energy controller for said energy
source having 'on' and 'off' positions, a
control system connected between the
controller and the first intensity responsive
device, and means controlled by said
second intensity responsive device includ-
ing means normally energizing the valve
closer and means for transferring control
from the first intensity responsive device
to the second and de-energizing the valve

closer in response to variations in energy
intensity.

"10. A heating system comprising a
heat energy source, a radiator with a con-
nection to said source, a temperature-re-
sponsive regulator including a relay with
first and second relay contacts, a valve
in the connection to the radiator, a con-
troller for said heat source, a control
line between said regulator and said con-
troller in series with said first relay con-
tacts, and a valve operator responsive to
said regulator through said second relay
contacts."

The references are: Gold 1,167,815 Jan-
uary 11, 1916; Martin 2,153,382 April 4,
1939; Parks et al. 2,310,745 February 9,
1943.

The invention here involved relates
to a system of controlling, independently,
the temperature in each of several rooms
which are heated by radiators which derive
their heating fluid from a common boiler
furnace. As stated in appellant's brief,
"The detailed circuit arrangements and
connections are not involved in the claims."
Each of the rooms is provided with a
thermostat. The thermostats are so con-
nected with a system of relays that the
furnace dampers will be set in heating
position when any one of the rooms is
below the desired temperature. In the
room which is normally the coldest, the
radiator is not provided with a control
valve and heat is, therefore, supplied to
that room whenever the furnace is hot.
In each of the other rooms the radiator
is provided with a control valve which is
normally held in an open position by a
spring but which is adapted to be closed
against the resistance of the spring by an
electromagnet. The circuit of the electro-
magnet is controlled by the room thermo-
stat so that when the room is cold the
circuit is broken and the valve is held open
by the spring and when the room is hot the
circuit is closed and the electromagnet
holds the valve closed.

The patent to Gold discloses a heating
system in which the supply of heating
fluid to a radiator passes through a manual-
ly controlled valve and an electromag-
netically controlled valve. The latter valve

is normally held open by a spring but, when the electromagnet is energized, the valve is held closed. The circuit of the electromagnet is controlled by a thermostat in the room heated by the radiator. The electromagnetic valve may also be closed manually.

The patent to Martin discloses a system comprising two rooms, each of which is heated by a radiator supplied with heating fluid from the same boiler furnace. The rooms are provided with thermostats which, through relays, control the furnace in such a way that it will provide heat whenever either room is below the desired temperature. In addition to controlling the furnace, each thermostat controls the supply of heating fluid to the radiator in the room in which the thermostat is located. In one illustrated embodiment of the invention, the control is effected by turning on or off a motor which causes circulation of the heating fluid to the radiator and, in connection with this embodiment, the patent specification states that "the circulators may be replaced by some form of automatically controlled valve mechanism such as a solenoid operated valve." In the second illustrated embodiment of the invention, the flow of fluid to the radiators is controlled by motor-actuated valves under the control of the thermostats.

The patent to Parks et al. discloses a valve for use in controlling the flow of steam to a radiator. The valve is urged toward open position by a spring and may be closed either manually or by a solenoid.

Claims 7, 8, 9, and 13 were rejected on the patent to Martin in view of the patent to Gold or Parks et al., on the ground that it would not require invention to employ, in the system of the Martin patent, electromagnetic valves of the type shown by either of the other references. In support of its views, the board pointed out that the patentee Martin states that the circulator motors may be replaced by solenoid actuated valves. Such a replacement as suggested by Martin would obviously be made by merely connecting the solenoids which actuate the valves in the control system in place of the circulator motors. With the latter arrangement the valves would be held open by the solenoids when the thermostats called for heat. The patent to Martin, therefore, clearly discloses a system which corresponds to that set forth in claims 7, 8 9, and 13, except that the fluid control valves would be held *open* by the solenoids, rather than *closed.*

It is argued by appellant that the idea of employing a spring-opened valve in the Martin system involved invention and that even if there was the suggestion of the idea of using such a valve, nevertheless, the manner of installing it would require the exercise of invention. In support of the first proposition, appellant points out that a spring-opened valve will open and permit the supply of heating fluid if there is a failure of the electric current, whereas, if a device is used in which the solenoid opens the valve, the fluid will be shut off in the event of a current failure unless the valve is forced open manually. That result, however, is inherent in the spring-opened type of valve and would be obtained in either the system disclosed in the patent to Gold or in that of the patent to Parks et al. Although no mention of current failure is made in either of those patents, each of them clearly contemplates a manual control when the electromagnetic means is inactive and in the event of any prolonged current failure, each of those systems would obviously be regulated manually.

There is no special or unexpected coaction between the spring-opened valve and the other elements of appellant's system, as set forth in claims 7, 8, 9, and 13. The valve would operate in the same manner whether the radiator controlled by it was the only one connected with the furnace or was one of a number so connected. We are, therefore, of opinion that no invention was involved in the idea of using spring-opened valves of the type disclosed in the patent to Gold and in the patent to Parks et al. for controlling the flow of heating fluid in the system of the Martin patent.

[1] Appellant contends that even if the idea of using a spring-opened valve

in the Martin system was suggested to one skilled in the art, the installation of such a valve would require invention. That contention is based on the assertion that it would not be possible merely to cut two wires of the Martin system and insert the valve disclosed in the patent to Gold and in the patent to Parks et al. That contention, however, is not the proper test in determining whether a combination of references involves invention. The question is whether the substitution, with such physical changes as would normally be incidental to making it, could be made without the exercise of invention. See In re Merkle, 150 F.2d 445, 32 C.C.P.A.Patents, 115.

The use of spring-opened valves in the Martin system would be a relatively simple matter. As hereinbefore noted, the patentee states that he may use solenoid-operated valves in place of his circulator motors. Such valves, if the exact connections shown by Martin were retained, would be of the spring-closed type and would be opened by the solenoids when heat was required. If those valves were replaced by spring-opened valves without changing the connections, the system would not operate properly, since the thermostats would hold the valves closed, when heat was required. However, the remedy for this would be obvious; namely, to reverse the connection of the solenoid to the thermostat, so that, when heat was called for, the thermostat would open the solenoid circuit instead of closing it and, when heat was not called for, the thermostat would close the solenoid circuit, thus energizing the solenoid and closing the valve. We are of opinion that such a change would be obvious to any skilled mechanic.

Appellant argues that none of the references discloses a connection for normally energizing the solenoid or valve closer. However, a spring-opened, solenoid-actuated valve must be energized, that is, closed, at all times except when heat is called for. Accordingly, the valve of the Gold or the Parks et al. patent, if used in the system in the patent to Martin, would be "normally energized" to the same extent as appellant's control valves.

For the reasons stated, we are of opinion that the use of spring-opened valves of the type disclosed in the patents to Gold or Parks et al., in the system disclosed in the patent to Martin, would not require the exercise of invention and that the rejection of claims 7, 8, 9, and 13 was, therefore, proper.

Claim 10 was held by the examiner and the Board to be readable on the embodiment disclosed in Fig. 2 of the patent to Martin which includes a motor actuated valve. The examiner, in his statement, has applied the claim to that structure in detail. Appellant points out that the claim calls for a relay with first and second relay contacts, and that Martin's relay includes three contacts. However, since claim 10 does not call for a relay having only two contacts, it is fully met by the Martin patent, as stated by the tribunals of the Patent Office. Appellant also asserts that certain other switches employed by the patentee Martin are virtually indispensable. However, there is nothing in claim 10 to exclude the use of additional switches. We are of opinion that claim 10 was properly rejected.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.