36 C.C.P.A.(Patents)

**Application of LANDROCK et al.**

**Patent Appeal No. 5566.**

United States Court of Customs
and Patent Appeals.

April 12, 1949.

Rehearing Denied May 26, 1949.

Edward H. Cumpston, of Rochester, N. Y., for appellants.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 21 to 29, inclusive, 37, 38, and 39 in appellants' application for a patent for an invention relating to a photographic copying machine. The appealed claims were rejected on the ground of lack of invention over the prior art cited.

Claims 32 to 36, inclusive, 40, 41, and 42 were allowed by the Primary Examiner. Claims 30 and 31 were allowed by the Board of Appeals.

Claims 21 and 27 are illustrative of the appealed claims, although we shall consider separately each of the claims in this opinion. Claims 21 and 27 read:

"21. A photographic machine adapted to have paper sheets and like objects manually placed in and removed from an exposure position thereon and for supplying separate copies thereof comprising a housing provided at its top with a table-like, work surface having therein a transparent portion adapted to have an object sheet manually laid in face-down, exposure position thereon, means in said housing for illuminating the under surface of said sheet through said transparent portion, a camera in said housing having an upright focal plane and means for projecting thereon the image of said sheet, means for supporting a film in said focal plane, means beneath said focal plane for feeding the film downwardly therethrough and for separately severing the successive film portions exposed in said plane, film conveying means, actuating means for said feeding, severing and conveying means, and control means located on said work surface for controlling said actuating means."

"27. A photographic machine comprising a housing with a table-like top having therein an exposure opening covered by a transparency adapted to have an object manually placed in and removed from exposure position thereon, a camera in said housing having a focal plane and means for projecting on said plane the image of an object transmitted downwardly through said transparency, 'film supply

means, film feeding and severing means, a first circuit including a motor for actuating said feeding and severing means, a conveyor for delivering the severed film from said housing, a second circuit including a motor for driving said conveyor, manually operable means for controlling said first circuit, and means operated by said first circuit for controlling said second circuit including said conveyor motor."

The references are:

| Caps | 1,808,836 | June 9, 1931. |
| Caps | 1,818,462 | August 11, 1931. |
| Anson | 2,117,279 | May 17, 1938. |
| Townsend | 2,121,061 | June 21, 1938. |
| Strotmann | 2,210,472 | August 6, 1940. |

Appellants' invention is a photographic copying apparatus comprising a horizontal table having a closed chamber located beneath the table top. Two horizontal windows are provided, one on each side of the table top, and are illuminated by lights within the chamber. A camera mechanism is located centrally of the chamber and includes a vertical film which is adapted to be fed downwardly through the chamber. A prism is located below each horizontal window and when a document is placed over either of the windows its image is reflected by the prism toward the side of the film adjacent the document. The passage of light from each prism to the film is controlled by a shutter and when the shutter is opened the document is photographed on the film. A cutting mechanism is provided for severing the film into the proper lengths after documents have been photographed on it, and the severed lengths are removed by a conveyor. The shutters, film feeding mechanism, cutters, and conveyor are operated in automatically timed relationship, the operation being initiated manually by an operator after he has placed documents over one or both of the windows.

The patent to Caps, No. 1,808,836, discloses a photographic apparatus comprising a table having a window in its top and a closed chamber below the top containing a light for illuminating a document placed on the window. The image of the document is reflected by a prism onto a vertical film, a shutter being located between the prism and film. Mechanism is provided for feeding the film downwardly and for cutting it into desired lengths. The apparatus photographs images on one side of the film only. The shutter and the film feeding and cutting mechanism are independently controlled by the operator.

The patent to Caps, No. 1,818,462, discloses a horizontal support for a document to be photographed and a camera including a vertical film and shutter and a prism mounted above the support for reflecting an image of the document onto the film. Means are provided for feeding the film downwardly and severing it, after a picture is taken, and a conveyor is provided for transporting the severed sections to any desired point. An automatic control mechanism is provided which, when its operation is manually started, operates the shutter to take a picture and, at the appropriate time, operates the film feeding and severing mechanisms to remove the exposed section of the film and sever it from the film strip.

The patent to Anson discloses a photoengraving device in which a picture is taken on a section of a film strip which is then severed from the strip and placed on the first of a series of conveyors. The conveyors are operated automatically and sequentially to carry the severed section of film to and through the developing apparatus.

The patent to Townsend discloses a photographic apparatus including a desk-like cabinet with a glass window in its top over which an object to be photographed may be placed, a housing below the top containing photographic apparatus, and controls for such apparatus mounted on the top of the cabinet.

The patent to Strotmann discloses a device comprising a desk-like cabinet containing a photographic apparatus and having control means for such apparatus mounted on the top of the cabinet.

Claims 21 and 22 were rejected on the disclosure in the patent to Caps, No. 1,808,836, in view of the disclosure in either of the patents to Townsend or Strotmann. It was the position of the Patent Office tribunals that, in view of either of the

patent disclosures in Townsend or Strotmann, there would be no invention involved in placing the mechanism disclosed in the Caps patent in a cabinet having a table-like work surface at its top, and in locating the controls for the mechanism on that surface. The patents to Townsend and Strotmann disclose the idea of locating a photographic apparatus in a cabinet having a table-like top which may be used as a work surface, and placing the control means for the apparatus on that top. There would be no invention, broadly, in view of those patents, in similarly disposing the photographic apparatus and control means of the Caps patent with the apparatus and its control means in the cabinet. Accordingly, we are of opinion that the broad combinations called for by claims 21 and 22 are not patentable over the references.

Claim 23 is similar to claims 21 and 22, except that it contains the additional statement that the actuating means for the shutter, feeding means, and severing means are "electric circuit means comprising motor means," and that the control means are switches. As to this limitation, the board properly held that "To broadly use an electric motor for the operation of any mechanism at this day and age obviously could not be considered patentable." Furthermore, the patent to Caps, No. 1,818,462, discloses the use of an electric motor for operating apparatus generally similar to that of the other Caps' patent, No. 1,808,836. If the actuating means used are motors, the control means will naturally be switches. Under such circumstances, we are of opinion that the action of the examiner and the board in rejecting claim 23 on the references relied on in their rejection of claims 21 and 22, in view of the disclosure in the patent to Caps, No. 1,818,462, was correct.

Claim 24 is similar to claim 23 and was rejected on the same references. This claim calls for separate motor means for actuating the shutter and the feeding and severing means. We are of opinion, as were the Patent Office tribunals, that this broad statement that separate motors are used defines nothing patentable. The statement in claim 24 that one of the switches is a "time switch" is too indefinite to add anything material to that claim. It follows that claim 24 was properly rejected.

Claims 25 and 26 were rejected as unpatentable over the patent to Caps, No. 1,808,836, in view of the patent to Townsend, or the patent to Caps, No. 1,818,462, or the patent to Anson, as stated, in substance, by each of the tribunals of the Patent Office. Those claims include the same general arrangement of a housing and photographic apparatus which is called for by claims 21 to 24, inclusive, and which we have hereinbefore held to be unpatentable. In addition to that arrangement, claims 25 and 26 call for a conveyor driven by an electric motor for removing the severed film from the housing, and switch means on the housing for controlling the motor. The use of conveyers for delivering film from the chamber in which a picture is taken is disclosed in the patent to Anson and in the patent to Caps, No. 1,818,462. We are in agreement with the Patent Office tribunals that it would not require invention to provide the apparatus of the Caps' patent, No. 1,808,836, with a motor driven conveyor for delivering the severed film from the housing or to locate a control switch for a motor at any convenient point.

Claims 27, 28, and 29 were rejected on the disclosure in either of the patents to Caps in view of the disclosure in the patent to Townsend and the disclosure in the patent to Anson. Each of those claims includes a motor for actuating the feeding and severing means, a conveyor for delivering severed film from the housing, and a means operated by the motor or its circuit for controlling the conveyor. Although sequential operation of conveyors is broadly old, as disclosed in the patent to Anson, the references do not disclose an *operating arrangement of film feeding, severing, and conveying means,* as called for by claims 27, 28, and 29. Considering that arrangement, in combination with the other elements called for by those claims, we are constrained to disagree with the Patent Office tribunals, and are of opinion that claims 27, 28, and 29 are patentable over the references of record.

Claims 37, 38, and 39 were rejected on the patent to Caps, No. 1,808,836, in view of the patent to Caps, No. 1,818,462. Claim 37 appears to be fully met by the patent to Caps, No. 1,808,836, except that the film feeding and severing means of the device shown by that patent are actuated manually rather than by an electric motor. We are of opinion that it would not involve invention, in view of the patent to Caps, No. 1,818,462, to provide an electric motor for actuating the film feeding and severing means, disclosed in the patent to Caps, No. 1,808,836, and to place the control switch for the motor at any desired point.

Claim 38, in addition to what is called for by claim 37, calls for guide means for alining the document to be photographed with the sides of the window. This, as the board pointed out, is an obvious expedient involving no invention. Claim 38 also contains the limitation that the camera shutter is actuated by an electric motor. That feature, however, is disclosed in the patent to Caps, No. 1,818,462, and, therefore, does not render the claim patentable.

Claim 39 is generally similar to claim 38, with the addition of a movable section in the housing to provide access to the film supply means. The provision of a removable section wherever desired for such a purpose is clearly an obvious expedient.

For the reasons stated, we are of opinion that claims 37, 38, and 39 were properly rejected.

Counsel for appellants emphasizes the fact that several references have been combined in the rejection of the appealed claims. However, where the features claimed have no special coaction with each other and are old individually, a combination of a number of references is proper. See In re Streckert et al., 167 F.2d 1010, 35 C.C.P.A., Patents, 1148. Furthermore, it is not necessary that the parts of a device shown by one reference should be capable of being incorporated bodily in the device of another without modification. It is sufficient if the prior art clearly suggests to one skilled in the art the arrangement called for by claims in a patent application. See In re Ewald, 104 F.2d 622, 26 C.C.P.A., Patents, 1312, and In re Merkle, 150 F.2d 445, 32 C.C.P.A., Patents, 1151.

For the reasons hereinbefore stated, we are of opinion that claims 27, 28, and 29 are patentable over the disclosures in the references of record, but that the other claims on appeal are not. Accordingly, the decision of the Board of Appeals is modified, being reversed as to claims 27, 28, and 29, and affirmed as to the remainder of the appealed claims.