43 C.C.P.A. (Patents)

**Application of Gilbert A. KELLEY.**
**Patent Appeal No. 6172.**

United States Court of Customs and
Patent Appeals.
Feb. 21, 1956.

Charles S. Haughey, Toledo, Ohio (Carl F. Shaffer, Toledo, Ohio, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

WORLEY, Judge.

This appeal is from the decision of the Board of Appeals of the United States Patent Office affirming final rejection by the Primary Examiner of claims 17, 19, 20, and 23 to 28, inclusive, of appellant's application, No. 76,-079, for a patent on an air conditioning system. Claim 28 was rejected as being drawn to a non-elected species, while the remaining claims on appeal were held to be unpatentable over the prior art. Four claims were allowed.

Claims 17, 24, and 25, representative of the appealed claims, are as follows:

"17. In apparatus utilizing a water solution of hygroscopic material to control the humidity of a gas and comprising a first sump, a second sump, a gas and liquid contact chamber, means for circulating a stream of solution from the first sump through said chamber and back to the first sump to remove water from said gas, a regenerator, means for circulating a stream of solution from the second sump to the regenerator and back to the second sump to remove water from the solution, the improvement which comprises control means for circulating a stream of solution from the second sump to the first sump at a fixed rate and for returning a stream of solution from the first sump to the second sump at a rate greater than said fixed rate by the rate at which water is removed from the gas in said chamber whereby to maintain constant and equal flow of hygroscopic material from the first sump to the second sump and from the second sump to the first sump.

"24. In apparatus utilizing a hygroscopic solution to control the humidity of a gas, in combination, means forming an internally cooled gas and liquid contractor, a first sump, means for circulating a stream of solution from the first sump over said contractor and back to the first sump, a regenerator, a second sump, means for circulating a stream of solution from the second sump through the regenerator and back to the second sump, means for transferring a stream of solution from the first sump to the second sump, and means for returning a complementary stream of solution from the second sump to the first sump.

"25. In apparatus according to claim 24, in combination, means for cooling said internally cooled contractor, and control means responsive to the temperature of the solution in said first sump for controlling said cooling means to maintain the temperature of the solution in said first sump substantially constant, thereby maintaining the temperature of the gas passing through said first chamber substantially constant.

"The references relied on are:
"Downs 2,192,126 February 27, 1940.
"Kelley 2,420,993 May 20, 1947."

Appellant's application relates to the cooling and dehumidifying of air. In the elected embodiment of the invention the air to be conditioned enters one end of a liquid contact chamber and passes over a cooling coil over which a dehumidifying liquid is being sprayed. The air is thus cooled and dried and is with-

drawn from the chamber at the other end. The dehumidifying liquid, with the water which it has absorbed from the air, falls into a sump at the bottom of the contact chamber, from which it is withdrawn by a pump and returned to the spraying device. The sump is provided with a weir over which the liquid flows when it reaches a predetermined level, and the liquid which thus overflows passes to a regenerator.

The regenerator includes a sump for receiving the liquid drawn from the sump at the bottom of the contact chamber. Above the sump of the regenerator there is mounted a steam heated coil over which outside air is circulated. Dehumidifying liquid is continuously pumped from the regenerator sump and sprayed over this coil, with the result that water is evaporated from the liquid and carried off by the air. The supply of steam to the heating coil is controlled by a float valve in the regenerator sump so that as the liquid rises in the sump more steam will be fed to the coil and consequently more water will be evaporated, thus maintaining the liquid in the sump at a substantially constant level.

Liquid is also continuously recirculated from the regenerator sump over a cooling coil, the supply of cooling liquid to the coil being regulated by a thermostat in the sump, whereby the temperature of the liquid is kept uniform. There is also a continuous return of regenerated liquid from the sump of the regenerator to the sump at the bottom of the contact chamber, such return being made at a fixed rate.

With the arrangement described, the moisture removed from the air in the contact chamber flows into the sump at the bottom of that chamber, together with the sprayed dehumidifying liquid, and the liquids accumulating in that sump pass over the weir to the regenerator at a rate which is dependent upon the rate at which moisture is absorbed from the air. In the regenerator the moisture is removed and the dehumidifying solution is returned at a fixed rate to the sump below the contact chamber as previously described.

The patent to Downs discloses an apparatus in which air to be conditioned passes over a cooling coil on which a dehumidifying liquid is being sprayed. The sprayed liquid, with the moisture which it absorbs from the air, is collected in a sump and recirculated to the spraying devices. Liquid from the sump is also circulated to a regenerator chamber containing a heating coil which evaporates water from the liquid and, after the liquid reaches a predetermined level in that chamber, it passes through a cooler and returns by gravity to the sump. The vapor escaping from the regenerator chamber passes upwardly into a separator in which most of the vapors of the dehumidifying liquid which are entrained with the water vapor are separated from it and returned to the heating chamber by gravity.

The patent to Kelley, owned by the present applicant, discloses an air conditioning system in which the air passes through sprays of dehumidifying liquid in a contact chamber and the liquid collects in a sump below the chamber, from which it is recirculated to the spraying devices. Liquid from the sump is also circulated through a regenerator in which it is sprayed over a heating coil which evaporates moisture from it after which the liquid returns to the sump. The temperature of the heating coil is controlled by an instrument responsive to the density of the liquid in the sump, so that that density will be kept substantially uniform.

All of the appealed claims, except claim 28, were rejected on Downs in view of Kelley. It was the position of the board that "the replacing of the regenerating device of Downs by a regenerator of the type disclosed by Kelley" would not amount to invention. A similar holding was made by the examiner. While the language used by the two tribunals differs, it appears that the basis of each holding is essentially that it would be obvious to the skilled work-

er in the art to substitute a separate regenerator chamber such as is shown by Kelley, for the heating coil in the regenerator chamber of Downs. If that were done, Downs' regenerator chamber would become a sump from which the liquid was withdrawn, passed through the regenerator, and returned to the sump.

■■ The suggested substitution involves merely the replacement of one old regenerating means by another generally equivalent means. We agree with the board that such would not involve invention. It is not necessary, in order to negative invention in such a case, that it should be possible to physically remove the elements in question from one device and insert them in the other; it is sufficient if a skilled worker, having the references before him would be able to produce the structure claimed by appellant. In re Ewald, 104 F.2d 622, 26 C.C.P.A., Patents, 1312; In re Merkle, 150 F.2d 445, 32 C.C.P.A., Patents, 1151; and In re Flick, 210 F.2d 832, 41 C.C.P.A., Patents, 799. The Kelley patent shows it to be old to remove moisture from a dehumidifying liquid by withdrawing the liquid from a sump or tank, passing it over a heating coil, and returning it to the sump or tank. We are of the opinion, in view of that showing, it would not require invention to remove the moisture from the dehumidifying liquid of Downs in that manner, instead of applying the heat directly to the liquid while in the tank.

■ Appellant points out certain advantages resulting from using separate sumps for the dehumidifier and regenerator together with an independent circulation of liquid between the regenerator and its sump. The board thought those advantages to be obvious, but even if that is not the case, it is well settled that patentability may not be based on results which flow naturally from the teaching of the art. In re Gauerke, 86 F.2d 330, 24 C.C.P.A., Patents, 725; In re Kepler, 132 F.2d 130, 30 C.C.P.A., Patents, 726; and In re Leum, 158 F.2d 311, 34 C.C.P.A., Patents, 762.

■ We think, as did the board, the proposed modification of Downs in view of Kelley would fully satisfy the requirements of appealed claims 20, 23, and 24, and the rejection of those claims should be affirmed.

■ Claim 25 adds to the combination of claim 24 a means responsive to the temperature of the solution in the sump of the dehumidifier for controlling the cooling means located in the dehumidifier. No such arrangement is found in the references. Contrary to the board's conclusion, we are of the opinion that this specific control, in combination with the arrangement of the two sumps defined in claim 25 presents a new and patentable combination. The claimed combination provides a simple and effective means for regulating the temperature of the air being conditioned.

■ Claim 26 distinguishes over the combination of references only by calling for cooling below 32° F. Again we agree with the board that the specific temperature recited involves merely a matter of degree and does not amount to invention.

Claim 27 is similar to claims 20, 23, and 24 with the addition of means for controlling the flow of liquid between the sumps in such a manner that "over a period of time equal flows of hygroscopic [dehumidifying] material are maintained" in each direction.

Claim 19 is similar to claim 27 with the further statement that the equality in the amounts of hygroscopic material being circulated is obtained by transferring from the regenerator sump to the dehumidifier sump a quantity of solution which is less than that transferred from the dehumidifier sump to the regenerator sump by the amount of water absorbed in the dehumidifier.

■ It is evident that in the proper operation of the Downs system, modified as above suggested, the capacity of the regenerator would be such as to remove from the dehumidifying solution

all the water absorbed from the air being conditioned since, if that were not done the solution would become more dilute and less effective and would accumulate in undesirable amounts. If all the water were thus removed in the regenerator of the modified Downs apparatus, then the amount of solution returned from the sump of the regenerator to that of the dehumidifier would be less than that passing from the dehumidifier sump to the regenerator sump by the amount of the absorbed water; and the amounts of hygroscopic material passing in the two directions would be equal. Accordingly, claims 19 and 27 recite merely the normal operation of the Downs system, as modified, and do not define invention over it.

Claim 17 includes the limitation that the solution being circulated is fed from the regenerator sump to the dehumidifier sump at a fixed rate and is returned from the dehumidifier sump to the regenerator sump at the fixed rate plus the rate at which water is absorbed by the solution in the dehumidifier. With that arrangement, the solution passes to the regenerator at a rate dependent upon the amount of water which it contains, with a greater dilution resulting in a faster flow to the regenerator. This is clearly a desirable result and is not suggested in the references. In Kelley there is only one sump while in Downs the rate of flow from the dehumidifier sump to the regenerator is constant and not affected by the rate at which water is absorbed. In our opinion the combination recited by claim 17 produces a new and unobvious result and should be allowed.

Claim 28 was rejected solely on the ground that it is drawn to a non-elected species. It was not considered on its merits by the examiner or the board and, accordingly, will not be so considered here. In re Arbeit, 201 F.2d 923, 40 C.C.P.A., Patents, 831. Whether the rejection of claim 28 was proper depends upon whether the application contains an allowable claim generic to the elected species and the species to which claim 28 is limited. It is conceded in appellant's brief that the rejection of claim 28 should be affirmed unless a generic claim is found allowable on this appeal. The record here contains no ruling by the examiner or the board as to whether claim 17 or claim 25, which are here held to be allowable, is generic. Under such circumstances, the decision of the board as to claim 28 is reversed and the case remanded to the Patent Office for further consideration of that claim in view of the present decision.

The decision of the Board of Appeals is affirmed as to claims 19, 20, 23, 24, 26, and 27, but reversed as to claims 17, 25, and 28. The case is accordingly remanded to the Patent Office for further proceedings consistent with this decision.

Modified.

JACKSON, Judge, retired, recalled to participate.