30 C.C.P.A. (Patents)

**In re NELSON et al.**

**Patent Appeal No. 4765.**

Court of Customs and Patent Appeals.

July 6, 1943.

W. H. Ramsey, of Washington, D. C., for appellants.

W. W. Cochran, of Washington D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

After allowing three claims in appellants' application for a patent on "Method And Means For Air Conditioning," the Primary Examiner of the United States Patent Office rejected claims 1 to 10 inclusive, 14, 15, 19, and 20, and upon appeal to the Board of Appeals the decision of the examiner was affirmed. Appellants have appealed here for a revision of the board's decision as to claims 6 to 10 inclusive, 14, 15, 19, and 20.

The main feature of the invention relates to reducing the humidity of the air which is used in the air-cooling system. However, appellants have included in some of their claims a combination of a ventilating apparatus, means for ozonizing the air, means for circulating the air, means for directing the stream of air through the ozone generator, and a spray head "arranged transversely" overhead, which, in some claims, is required to be so constructed that each of the nozzles of the spray has a bore of "substantial length with respect to its cross-sectional area adapted to project a smooth surfaced continuous jet or column of water."

Appellants' specification explains that aside from other novel features relating to the location of the ozonizer, the chief novelty of their invention and the great utility flowing therefrom reside in providing a spray with nozzles and pressure on the water passing therethrough which will produce a smooth-surfaced stream. That is to say, the stream is not broken up, but the outside of the column of water has a smooth surface which permits the moisture in the air to condense thereon and be carried away—condensed as it would be on a smooth-surfaced metal pipe. Appellants teach that if the water is sprayed or otherwise projected across the stream of air in such form that there are separate drops, the humidity of the air is increased rather than decreased. The purpose of the ozone generator seems to be the same as that disclosed in most prior art air conditioning structures, except that appellants contend that the novel arrangement or location of the ozone generator makes possible a new result from their system.

Claims 6, 8, and 14 seem to be typical. They read as follows:

"6. In ventilating apparatus, means for ozonizing a body of air including means for producing circulation of the air in said body comprising a conduit, means for directing a stream of air thru said conduit, an ozone generator discharging ozone into said conduit, a spray head arranged transversely and adapted to discharge a relatively thin curtain of moving particles of water across said stream to wash the air and regulate the humidity of the stream of air and ozone, a receptacle arranged at the

side of said conduit opposite the spray head positioned to catch the water particles, and a closed water circuit including flow control means, said circuit joining said receptacle and spray head to constitute a closed path for the water."

"8. The method of giving bactericidal properties to a body of air by the use of ozone comprising directing a stream of air past a continuous discharge of ozone, effecting turbulence of the whole and intermixture thereof, directing said intermixture by forced flow thru a laterally directed curtain of water, regulating the particles constituting said curtain to those of such size as not to be carried along by said forced flow of said intermixture and discharging said intermixture thus treated into said body of air to commingle therewith."

"14. In ventilating apparatus, means for varying the humidity of a body of air comprising a conduit, means for directing a stream of air thru said conduit, and a pressure-type spray head provided with a nozzle arranged above said stream of air and adapted to discharge a jet of water vertically across said stream of air, said nozzle having a bore adapted to project a smooth surfaced continuous jet or column of water."

The references relied upon are:
Davidson 1,234,736 July 31, 1917.
Summers 1,310,511 July 22, 1919.
Pierson 2,173,073 Sep. 12, 1939.
Willoughby (British) 435,372 Sep. 19, 1935.
Electrical World, Vol. 54, No. 17, pages 1000 and 1001, (October 21, 1909)

The Primary Examiner rejected claims 6 to 10 inclusive, 19, and 20 as being directed to the "old combination of an ozonizer and a humidifier or an ozonizing step and a humidifying step, as shown by Pierson, Davidson, and Electrical World," and stated: "There is no novelty in the combination, but whatever invention there may be resides in the humidifier or humidifying step per se." He rejected claims 14 and 15 "as lacking invention over each of Summers and Willoughby," stating that: "Both of these patents disclose the same combination which applicants claim, but claims 14 and 15 specify that the nozzles are so constructed as to project a smooth column of water. No invention is seen in providing the spray heads of the patents

with bores suitable to produce a smooth jet of water."

The Board of Appeals, in affirming the decision of the examiner, had the following to say:

"The appealed claims stand rejected as for an old combination recognized as old by appellants in their brief, that is, to maintain the temperature, control humidity, clean air, and regulate the ozone delivered to any given locality. It is urged that appellants have learned that the quantity of ozone present for useful work may be controlled by varying the humidity as efficiently as by varying the amount of ozone produced. We note in this connection the following statement of Willoughby, page 1, line 101, to page 2, line 2;

"'The air passing through the cooling device cools down and is freed by condensation from a portion of the water vapour with which it is saturated. This cooling of air and the final hygrometric degree of said air can be adjusted by varying the speed of revolution of the fan C.

"'The air that has thus been purified and cooled is now in the best condition for undergoing an ozonizing treatment.'

"Appellants have not discussed this patent nor the Summers patent, both of which appear to us to be pertinent. It may be conceded that none of the prior art references discloses a spray head of the special character referred to in most of the claims on appeal but as the examiner states, the improvement would appear to be in this spray head rather than in the combination."

The board concluded that the examiner should not have relied upon the Pierson patent because it was not prior art, and that it should be withdrawn as a reference.

The Davidson patent is directed to "Improvements Relating to Ventilation." The apparatus of this invention, the patent states, "may combine as a complete unit means for heating, humidifying ozonizing, and distributing air." The patent also states that the apparatus may include "means for ozonizing the air by use of a known apparatus consisting of a static transformer and ozone generator, which is placed preferably on the suction side of the fan and in the path of the air."

Summers relates to "Processes for Ventilating and Cooling." The Summers structure consists of a fan, an air chamber, a spraying device, a cooling system, and an

ozonizing device. The function of the water spray in this structure is to wash the air. Dehumidification is accomplished by passing the air over the surface of cooling coils through which "ammonia or cooling brine is circulated."

The British patent to Willoughby relates to "Apparatus for Conditioning Air." The apparatus of this patent comprises a device for filtering the air, a device for washing the air, a cooling device (which also dehumidifies the air), and an ozonizing device. All these elements are "mounted inside a conduit through which the air to be treated is discharged or aspirated by means of a fan." As in the Summers structure, dehumidification is brought about, not by the water spray, but rather by the cooling coils.

The Electrical World reference was apparently cited merely to show that in an air conditioning installation at the Chicago Public Library, greater efficiency was obtained by placing an ozone generator between the fan and spray of water used in washing the air (as appellants have done) than by placing it in front of the spray.

It seems to us that the position of the Patent Office tribunals with respect to claims 6 to 10 inclusive, 19, and 20 is correct. That is to say, appellants have an old combination of elements, because in our view the only difference in appellants' method or apparatus which would lend patentability to a combination claim over the prior art would be that element which was designed to project a smooth-surfaced, continuous jet or column of water across the air stream. We are not impressed with the contentions of appellants relating to the meritorious features of these claims which do not contain the limitation relating to a smooth stream of water. Claims 19 and 20 say nothing about a smooth stream of water. Claim 19 emphasizes a "perforate screen located intermediate said generator and said spray head having apertures of sufficient size to permit air to flow therethru but to prevent water spray from passing from said head to said generator." Claim 20 emphasizes a series of baffle elements extending across the air stream and means for cooling the baffles below the temperature of the air stream. All the claims except 14 and 15, we think, were properly rejected for the reasons stated by the board, and further discussion of this phase of the case is unnecessary here.

■ However, as to claims 14 and 15, we are not convinced that the tribunals below arrived at the right conclusion. Those claims contain the limitation directed to a smooth stream of water, as do the allowed claims. The rejection on the ground of old combination should not be applied to a claim that includes an element which is improved over the prior art and which in its relationship to the combination coacts with the other elements in a new manner so as to bring about a new, useful, and unobvious result. In other words, if appellants' spray, with "bore adapted to project a smooth surfaced continuous jet or column of water," causes removal of humidity which a broken stream would not cause, then there would be a coaction between the improved element and the other elements of the claims, and they should not be rejected upon the ground that the improvement, if any, resides alone in the spray. In re Cook, 30 C.C.P.A.(Patents) ——, 134 F.2d 494; In re Germantown Trust Co., Executor, 19 C.C.P.A.(Patents) 1140, 57 F.2d 365.

It is probably true that jets of water with smooth surfaces have been made to flow under many circumstances, but this record does not disclose that anyone ever produced a smooth-surfaced stream in the same relationship as have appellants. The utility and novelty of this particular feature of appellants' invention is not denied. It is nowhere asserted by the Patent Office tribunals that appellants' structure will not do what is claimed for it or that there is lack of novelty and utility in requiring, in an air conditioning device, that the air to be conditioned should come in contact with a smooth-surfaced stream of water. If appellants' theory as to what happens is correct (and it is not denied by anyone), we can see where great utility would probably flow from the combination of old elements of an air conditioning device with the element of a solid stream of water.

■ We conclude that claims 14 and 15, both of which depend for their patentability upon the combination containing the nozzles which make the smooth stream of water, should have been allowed.

This is not the first time this court and other courts have been presented with the problem of an applicant's claiming an improvement in a device in the form of a combination claim, where the rejection was based upon the ground that it was an old

combination and that the improvement, if any, rested in the improved element. The controlling rule has often been stated. See In re Cook, supra, and cases therein cited. In the instant case we cannot see how appellants could well claim their real invention without claiming it in the combination in which it belongs.

Concluding as we do that the improved element in claims 14 and 15 coacts with the old elements so as to bring about a new and useful result due to such coaction, we think such combination claims are not bad for the reasons stated by the tribunals.

The decision of the Board of Appeals is reversed as to claims 14 and 15 but affirmed as to the other appealed claims.