37 C.C.P.A. (Patents)

Application of OSTERMANN et al.
Patent Appeal No. 5628.

United States Court of Customs and Patent Appeals.

Feb. 2, 1950.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich. (Stuart C. Barnes, Detroit, Mich. and Stephen W. Blore, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

O'CONNELL, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims numbered 7, 9, 10, 13, 16, and 19-24 in appellants' application for a patent for an improvement in a core blowing machine and for the cartridge used in the machine. Claims 15 and 18 for the cartridge were allowed by the Board of Appeals.

The following references were relied upon:

"Campbell 1,447,376 Mar. 6, 1923
Campbell 1,594,598 Aug. 3, 1926
Candler 1,703,708 Feb. 26, 1929
Meyer 1,927,571 Sept. 19, 1933
Romph 1,950,632 Mar. 13, 1934
Rolff 1,994,028 Mar. 12, 1935

"13. A sand cartridge for use in a core blowing machine and with one particular core box or a line of similar core boxes and for carrying a limited charge of sand for blowing into such box or boxes, comprising a long and narrow upright body portion which is arranged to carry a charge which is limited to substantially the requirement of one blow and in which the charge is concentrated for effective application of the air stream and an enlarged base portion, the cartridge expanding only at the extreme lower end for spanning the top of the core box, the said base having a limited vertical thickness so as to concentrate the several air streams of air pressure leading to the openings in the core box, said cartridge being a light portable container which may be manually filled by plunging the same in a pile of sand and may be manually placed between the core box and the air reservoir of the machine and clamped therebetween by relative movement of these parts.

"19. A machine for charging a core box with sand, having in combination a platform for supporting the core box, an air reservoir, an upright and laterally extending frame member for supporting the reservoir above the platform to allow one relative movement with respect to the other, means for giving the reservoir and the platform relative movement, and a portable cartridge separate from other parts of the machine and adapted after each operation to be removed from the machine and manually loaded and then replaced between the reservoir and the core box on the platform and pinched between the same when relative movement occurs between the two, said cartridge having a hollow upright column dimensioned to contain substantially only one charge for the requirements of one blow of core or cores and having a laterally extended shallow base for spanning all the core box openings and to provide open-

ings and to provide openings in the bottom of the base to register with the core box openings, said base having little depth to concentrate the air pressure and leave after a blow a light-weight protective plug of sand in the base which will protect the core box contents from direct contact with the high pressure air and will not materially interfere with ease of handling the cartridge in removing it from the machine, reloading it and replacing it in the machine."

The claimed machine may be a small one operated by hand on a work bench. The principal elements of the device include a cylinder, which forms an air reservoir; a cartridge, which contains for discharge only the necessary amount of sand for each core box; and a core box provided with several core cavities and supported upon the table which forms the base of the machine. An upright post or vertical standard fixed to the base has an arm which extends laterally for supporting the movable air reservoir. The air reservoir can be raised or lowered by a rack, secured to the side of the reservoir, which meshes with a pinion or gear when the latter is moved by the lever or crank provided for that purpose.

Appellants provide with their device a set of cartridges of different sizes and dimensions. The brief for appellants explains that "The customer purchases the cartridges which he thinks will cover all the different core boxes that he will use in normal practice. He then bores openings in the bottom plates of the cartridges to conform with openings in the core boxes that he normally uses."

The patent to Campbell, No. 1,447,376, relates to certain improvements in a pneumatic sand hopper designed for handling green sand. The mold or core box, in which a number of core forms are included, is located on a table mounted for vertical movement. The vertical movement of the table clamps the hopper and the core box, with cover plate therefor, between a rubber gasket and the table to prevent the escape of air around the upper end of the hopper.

The patent to Campbell, No. 1,594,598, relates to a molding apparatus operated by air for the forcing of sand into molds or core boxes. The structure disclosed includes a pattern which rests on a board which, in turn, is supported on a suitable base. A gasket ring of rubber provides a seal for an upper air container of relatively large size.

The patent to Candler relates to a machine for making sand cores with compressed air. A piston forces the core box into engagement with the sand cylinder. Thereafter compressed air is used to force the sand out of the cylinder, "just as a bullet is propelled from a gun by the explosion of the charge." Candler also made following statement with respect to the attainment of the desired results:

"I have discovered that by increasing the length, decreasing the diameter, properly forming the mouth, as well as by restricting the volume of sand in the cylinder thus formed to the amount of sand necessary to fill one core, plus a reasonable margin of safety, I am able to eject the sand with the minimum consumption of compressed air and to produce cores with the least labor cost. In other words, I eject the sand from the device very much as a shell is ejected from a gun and thus every charge is ejected under like conditions, which renders the quality of the product uniform and controllable."

The patent to Meyer relates to a dental casting machine wherein molten gold used in the preparation of metal inlays, crowns, and bridge work is forced into the mold cavity by means of gas or compressed air. The inner portion of the gas discharging plunger, or air pressure head, has a vertically disposed rack which meshes with a gear segment fixed to a rock shaft. The shaft is provided with an operating lever by which the plunger or head may be raised or lowered.

The patent to Romph relates to a method and mechanism for forming sand cores whereby the sand is blown into the molds by air under pressure. The sand conveyor or transfer member is in the form of a hollow elliptical cylinder and is movable from a position beneath the hopper mouth to a position beneath the blowing head.

The core box may be moved or carried upwardly with a piston into position under the sand transfer member so that air from a pipe can be used to blow sand into the core box. The specification states that "The interior configuration of the box to form the desired core shape may be effected by properly shaping the inner walls of the bottom, end and side plates."

The patent to Rolff concerns a blowing machine in which sand to be molded is forced from a sand container into a core box by compressed air. The sand container, which is built into the machine and is larger at the bottom than it is at the top, is mounted so as to be vertically movable by the aid of two guide arms. It is clamped against the core box by moving a described head downwardly against the top of the container. Rolff in his patent claimed not only the described machine but also the machine comprising, in combination, the respective elements thereof as hereinbefore described.

The book written by Harry W. Dietert, entitled "Modern Core Practices and Theories," according to the examiner's statement, was first cited by appellants and gives a picture of the background into which their application fits.

The examiner applied numerous grounds in the rejection of the claims. Certain rejections were reversed and others were not affirmed by the Board of Appeals. The board affirmed the examiner's rejection of claims 20, 23, and 24 on the ground that the specific proportions of the structure therein defined were drawn to subject matter not sufficiently disclosed in appellants' specification as originally filed. A copy of the original specification is no part of the record before the court. There is no error, however, in the concurring decisions of the tribunals of the Patent Office overruling the contention relied upon by appellants that the involved new matter, inserted in claims 20, 23, and 24 for the purposes of appeal, was sufficiently disclosed in the original drawings filed by appellants. Accordingly, those claims need not be further considered here.

The examiner conceded that the structure defined by the appealed claims departed from the structure common to the conventional core blowing machines with respect to the shape of the sand container or cartridge. He took the position that the most important difference between the structure defined by the appealed claims and the respective structures of the references resided in the dimensions and proportions of the sand container or cartridge claimed by appellants. With respect to three other elements in which appellants' device departed from the conventional structure of the references, the examiner stated:

"One is that while the references seek to avoid needless expenditure of labor by mounting the container so that it is unnecessary for the operator to lift the filled container, applicants dispense with this refinement. Another is that while it is more usual to move the core box towards a stationary head, applicants effect the clamping moving the head toward a stationary core box. The last is the use of a lever actuated pinion and rack to move the head."

Claims 7, 13, 15, 16, 18, and 22 were rejected by the examiner on the ground that the cartridge therein defined was not patentable over the structure defined in each of the patents of the cited prior art. The Board of Appeals affirmed that rejection in so far as it applied to the enumerated claims, other than claims 15 and 18.

The examiner's rejection of those two claims was reversed by the board and by it allowed on the ground that they distinguished from the references in a patentable sense because the body portion of the cartridge defined in such claims "develop the two essentials that there is a part of uniform cross section at one end of which there is an expanded end portion." All of the claims enumerated in the preceding paragraph bring out in one way or another the essential features of the cartridge as defined in the two allowed claims. Accordingly, we find no basis upon which to reverse the action of the board with respect to claims 7, 13, 16, and 22.

The Board of Appeals affirmed the examiner's rejection of claims 9, 10, 19, and

21 not only on the ground that they were drawn to an old combination but also on the alleged ground that they were not patentable over the structure defined in each of the cited references.

The examiner's stated reason for the rejection of the enumerated claims on the ground of old combination was that, in view of the showing in the patent to Rolff, appellants' invention, if any, was not in the combination of the cartridge with the machine but resided solely in the improvement of the element consisting of the cartridge. The board in affirming that rejection overruled appellants' contention, that the new result was obtained by the combination of the machine and the cartridge, and held that any new results were attributable to the cartridge per se and not to the old combination with which it was used.

 Where a combination of elements is old, no new combination is made by merely improving one of the elements of the old combination. Application of Lambert, 165 F.2d 441, 35 C.C.P.A. (Patents) 839; In re Ratican, 36 App.D.C. 95. A new and patentable combination is legally recognized, however, where an element which is improved over the prior art coacts in its relationship with the other elements of the old combination in a new manner and a new and useful result is thereby obtained. In re Nelson et al., 137 F.2d 106, 30 C.C.P.A., Patents, 1257; Ex parte Mumford, 206 O.G. 878. See also Loom Company v. Higgins, 105 U.S. 580, 591, 26 L.Ed. 1177; application of Kinney et al., 168 F.2d 756, 35 C.C.P.A., Patents, 1253.

There is no disagreement between counsel for appellants and the Solicitor for the Patent Office that the shaping of the new cartridge as specified in the claims on appeal makes for ease not only in handling the cartridge when taking the cartridge out of the machine and plunging it in the sand for refilling, but also in concentrating the stream of air and preventing air diffusion and waste of air in making the blow.

A comparative analysis of the combination defined in appealed claims 19 and 21 with the combination defined in the patent to Rolff discloses not only that certain corresponding elements of the involved structures are materially different but also that such elements in appellants' structure coact in a new and different way to bring about a new and useful result. Moreover, the elements of the structure of the combination defined in claims 19 and 21 are not disclosed in any of the cited references.

 Appellants have not merely substituted one sand container or a smaller machine for another whereby the same result has been produced in the same manner as in the structures of the cited art. The elements of the combination claimed by appellants produces a unitary result which has contributed something new to the art worthy of patent protection by the allowance of claims 19 and 21.

The decision of the Board of Appeals is accordingly modified, being reversed with respect to claims 19 and 21, and affirmed as to the remainder of the appealed claims.

Modified.

By reason of illness, HATFIELD, J., was not present at the argument of this case and did not participate in its decision.