## In re BUTTOLPH.

Patent Appeal No. 3476.

Court of Customs and Patent Appeals.

Feb. 25, 1935.

Rehearing Denied March 25, 1935.

Raphael Tourover, of Washington, D. C. (Lee B. Kemon, of Washington, D. C., and Thos. H. Brown, of Hoboken, N. J., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States

Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 8, 9, 10, 23, 24, 25, 32 to 43, inclusive, 51 to 57, inclusive, and 61 to 67, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in vapor arc lamps, and a method for operating the same.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss claims 1, 8, 9, 10, 32 to 43, inclusive, 56, 57, and 66.

Claims 2, 24, 51, and 55 are illustrative. They read:

"2. An alternating current arc lamp for commercial circuits comprising a sealed tubular container, filamentary exciting terminals sealed therein, a gas or vapor between said terminals, a source of alternating current connected to said terminals, means for impressing a starting potential across the said terminals, and means co-operating with said filamentary terminals for maintaining the said gas or vapor in a conducting state over the zero points in the alternating current source."

"24. An electric arc lamp for commercial circuits comprising a sealed, elongated tubular envelope, the length of said envelope being materially greater than its diameter, in a minimum ratio, of approximately five to one, electron emitting electrodes sealed in the ends of said envelope and spaced apart therein a distance so that an elongated arc discharge between said electrodes follows a path co-extensive in length with the tubular envelope and close to its walls, said envelope having a metallic vapor atmosphere modified by a rare gas, whereby low starting potential characteristics and a brilliant illumination are attained."

"51. The process of operating a positive column light tube containing an attenuated carrier atmosphere which consists in applying an alternating current e. m. f. to electrodes spaced apart within the tube to determine a positive column arc through said atmosphere and heating the said electrodes until they generate electrons in sufficient quantity to make the atmosphere of the tube conductive for current flow in either direction between said electrodes under the applied e. m. f."

"55. An electric arc lamp comprising a sealed tubular envelope, terminals therein, one of which is a filament having end leads sealed through the envelope, an ionizable, gaseous current path in the envelope, extending between the said terminals, and a material, in operable relation to the filamentary terminal but spaced therefrom, which is capable of emitting electrons when the said filament is energized, in combination with a source of current connected across the said terminals and having a potential sufficient to maintain an electric arc discharge from one terminal to the other, once an arc is initiated through the said gaseous current path, and means for impressing a higher potential than that of the maintaining source on said terminals to initiate an arc through said gaseous path."

The references are:

Hewitt, 1,110,543, September 15, 1914.
Skaupy (German), 302,806, December 31, 1917.
Orange, 1,306,559, June 10, 1919.
Friederich, 1,422,553, July 11, 1922.
Lederer, 1,461,360, July 10, 1923.
Moore, 1,677,000, July 10, 1928.
Compton in A. I. EE., vol. 46 (1927), pp. 858–883.

Claims 23, 24, 51, 52, 53, 54, 61, 62, 63, 64, 65, and 67 were rejected by the Board of Appeals for want of disclosure in appellant's original application.

Claims 23, 24, 62, 63, and 67 were also rejected as unpatentable over the patent to Skaupy, in view of the patent to Orange.

Claim 65 was also held unpatentable over the reference Skaupy, in view of the patent to Lederer, as were claims 2 and 25.

Claim 61 was held unpatentable over the patent to Skaupy.

Claim 55 was held unpatentable over the patent to Skaupy, in view of the patent to Friederich.

In addition to the grounds of rejection discussed by the Board of Appeals, the Primary Examiner also rejected the appealed claims on the ground of undue multiplicity, and cited the following cases in support of his decision: In re Spencer, 47 F.(2d) 806, 18 C. C. P. A. (Patents) 1041; In re Dann, 47 F.(2d) 356, 18 C. C. P. A. (Patents) 1031; Ex parte Conrad, 388 O. G. 525; Ex parte McCullough, 355 O. G. 185, 1927 C. D. 12. That ground of rejection was not reversed by the Board of Appeals, and is, therefore, before us for consideration. In re Wagenhorst, 64 F.(2d) 780, 20 C. C. P. A. (Patents) 991.

In the case of In re Leroy J. Buttolph, Patent Appeal No. 3116, decided December 24, 1934, 73 F.(2d) 936, 22 C. C. P. A. (Pat-

ents) ——, this court affirmed the decision of the Board of Appeals holding that appellant did not disclose in his original application, of which the application in the case at bar is a division, a "discharge tube for positive column light," and that, therefore, he was not entitled to claim a device of that character.

■ Claims 51, 52, 53, 54, and 64, of which claim 51 is illustrative, relate either to discharge tubes for "positive column light," or to a process for operating such tubes. We are in accord with the board's rejection of those claims on the ground that appellant did not disclose the subject-matter defined therein in his original application. In re Buttolph, supra.

Claims 23, 24, 25, 61, 62, 63, 65, and 67 contain the specific limitation, substantially as stated in claim 24 hereinbefore quoted, an "elongated tubular envelope, the length of said envelope being materially greater than its diameter, in a minimum ratio, of approximately five to one." In addition to other grounds of rejection, those claims, except claim 25, were rejected by the Board of Appeals because of failure to disclose in appellant's original application those dimensions, which it is contended vitalize those claims and make them patentable. This issue has been fully discussed in the decision of the Primary Examiner, and his conclusions concurred in by the Board of Appeals; the board stating that such limitations were based entirely, and without justification, upon a "diagrammatic disclosure." The conclusion reached by the tribunals of the Patent Office relative to those claims is so obviously correct that we deem it unnecessary to enter upon a discussion of the matter.

Claim 2 was rejected by the Board of Appeals on the patent to Skaupy, in view of the patent to Lederer. That claim contains the statement "an alternating current arc lamp for commercial circuits," and it is contended by counsel for appellant that the patent to Skaupy, hereinafter referred to, relates to a high voltage device; whereas appellant's lamp is of the low voltage type; and that, therefore, the patent to Skaupy is not a proper reference. It is a sufficient answer to appellant's contention to say that the claim is not limited to a "low voltage" device. It is limited, however, to "means co-operating with said filamentary terminals for maintaining the said gas or vapor in a conducting state over the zero points in the alternating current source." With reference to that limitation, the board stated that the patentee Skaupy obtained the same result "by use of thick tungsten spirals and possibly also by the use of a rare gas. He states as one characteristic of his lamp that the ionization may exceed in duration the time from one-half wave to another. It seems obvious that this must have depended on some such expedient as above referred to, and incidentally also upon the use of alkaline metal although perhaps not recognized by the patentee."

In view of the fact that the Board of Appeals has concisely stated the teachings of the patents to Skaupy and Lederer, we deem it sufficient to quote from its decision relative thereto:

"Skaupy contemplates utilizing a gaseous filling for his tube and states that with rare gas the danger occasioned by the use of high voltages is reduced; in other words, this is a disclosure of the second of appellant's means for facilitating easy starting, the first being the heated cathodes which correspond in all respects with those of Skaupy. Skaupy also proposes to use in his tube small quantities of alkaline metals. While these are not introduced for appellant's particular purpose, it is the examiner's view that they would inherently serve as emitters of electrons and would accordingly lower the starting resistance of the Skaupy tube. From the Lederer patent cited it appears that 'traces of these metals or alloys are sufficient.' Such being the case, we think the alkaline metals employed by Skaupy would inherently function in the manner of the corresponding metals used by applicant. Skaupy is not particularly definite as to the location of these metals, they being placed, according to the translation, in the path of the discharge.

"Lederer uses the same metals for substantially the same purpose and so introduces them that a deposit will be formed on the wall of the tube in the region of the anode and possible also along the anode itself. Any deficiencies in the Skaupy disclosure with respect to mixtures of gases or the location of metallic emitters is in our opinion supplied by the Lederer patent. Lederer, like appellant, was interested in reducing the necessary potential across the electrodes. He brought about this reduction of potential by using certain of appellant's expedients, viz., the use of a gas or mixture of gases and the use of an emitting alkali metal."

Claim 55 was rejected by the Board of Appeals on the patent to Skaupy in view of the patent to Friederich. As stated by the board: "The Friederich patent shows an arc lamp having electrodes, one or both of which may be heated, which may embody an active emitter, which are designed to operate in a gaseous medium and in one which is charged with mercury vapor. Among the gases contemplated argon is mentioned, also nitrogen, and a statement is made that these gases may be mixed. Mercury vapor is also employed, as above intimated."

In view of the teachings of the patents to Skaupy and Friederich, the board concluded that: "The disclosure of this patent is anticipative of anything taught with respect to the use of mixtures of mercury vapor and gases in this application as filed. It also anticipates its generic teachings as to the use of alkali metals to assist starting."

■ With reference to the question of undue multiplicity of claims, the Solicitor for the Patent Office stated in his brief that: "Aside from the electrical circuits and connections to the electrodes, which are involved in the appealed claims only in a broad way, there is left nothing of appellant's device but the tube with electrodes at each end and a gaseous filling therefor. On this simple subject matter, aside from the ten claims allowed, appellant has seen fit to present the some thirty-four claims involved on the appeal. The statutes require (U. S. C. title 35, § 33 [35 USCA § 33]) that the applicant, in order to obtain a patent, 'shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery.'"

In the case of Ex parte McCullough, supra, the Commissioner of Patents pointed out the difficulties attending the filing of patent applications containing undue multiplicity of claims, and stated that such applications interfered with the work of the Patent Office; that they were unfair to the applicants themselves, to other inventors, and to the public; that they had been condemned by a committee representing the "Patent Bar Association"; that protracted consideration of such applications by the Patent Office had been criticized by committees of Congress; and that the courts had, at times, expressed disapproval of the issuance of patents containing an unnecessarily large number of claims.

Obviously, if permanent relief is to be had in the premises, it is necessary for the Patent Office tribunals to enforce compliance with the provisions of section 4888 of the Revised Statutes, as amended (U. S. C. title 35, § 33 [35 USCA § 33]), which read: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, *in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same;* and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; *and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery.* The specification and claim shall be signed by the inventor. No plant patent shall be declared invalid on the ground of noncompliance with this section *if the description is made as complete as is reasonably possible.*" (Italics ours.)

We are not unmindful of the fact that it is sometimes difficult to define an alleged invention with conciseness and precision. However, such difficulty ought not to be used as an excuse to present an unnecessarily large number of claims, the net result of which is to confuse, rather than to clarify, the issues relative to an alleged improvement, which, it is claimed, involves invention.

Although we are in entire accord with the specific reasons assigned and discussed by the Board of Appeals in its rejection of the appealed claims, we are of opinion, nevertheless, that they might well have been rejected on the sole ground of undue multiplicity. In re Duncan, 49 App. D. C. 372, 265 F. 1012, affirming the decision of the Commissioner of Patents in Ex parte Duncan, 1920 C. D. 36. See, also, In re Dann, supra; In re Spencer, supra.

The appeal as to claims 1, 8, 9, 10, 32 to 43, inclusive, 56, 57, and 66 is dismissed.

As to the other appealed claims, the decision of the Board of Appeals is affirmed.

**Affirmed.**