39 C.C.P.A. (Patents)

## Application of LEE.

### Patent Appeal No. 5815.

United States Court of Customs and Patent Appeals.

Dec. 18, 1951.

substantially horizontal telescoping conveyer including endless traveling conveyer mechanism mounted thereon and extending substantially the full length of said machine, said conveyer having a gathering head at the front end carrying laterally spaced coal gathering means for gathering coal and delivering it to said conveyer and having a reciprocable head shaft carried by said gathering head, traction means for supporting said main frame, means for anchoring the rear discharge end of said conveyer while providing for its pivotal movement together with said traction means in a horizontal plane, and means for feeding said gathering head and said conveyer head shaft rectilinearly while said gathering means are in operation to gather coal by frontal attack while it is discharged at a selected fixed position at the rear end of said machine.

"42. In a loader, the combination with a frame, conveying mechanism on said frame, a pair of traction wheels, one on each side of said conveyer, power means for driving said traction wheels, means mounting said traction wheels for swinging movement about upright axes, means for swinging said wheels simultaneously oppositely and for locking said wheels while parallel and also while angularly disposed, said means including operating levers one connected to each wheel, a member pivoted to said frame, pivotal connections between said levers and said member on opposite sides of the pivotal connection of said member, and releasable means for latching said member."

Appellant's disclosure is explained sufficiently for the purpose of this appeal in the following excerpt quoted from the examiner's statement of record:

"The machine claimed, used for gathering broken-down coal at the mine face and conveying it to a disposal means, comprises a low elongated four-wheel vehicle having an endless conveyer extending longitudinally therealong. An ordinary gathering head at the front end loads coal onto the conveyer, which is of the extensible or telescopic frame type in which one section can be projected or retracted relatively to the other by action of suitable motive mechanism, to change the overall length of the

Harker H. Hittson, Columbus, Ohio, for appellant.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner who rejected claims 1, 2, 3, 42, 43, 86, and 87 of appellant's application for a patent covering alleged new and useful improvements in a conveyer for loading coal, particularly from a mine room. Eight claims were allowed by the board.

The references are:

| | | | |
|---|---|---|---|
| Jamison | 1,128,880 | Feb. 16, | 1915 |
| Joy | 1,306,064 | June 10, | 1919 |
| Burnell | 1,449,088 | Mar. 20, | 1923 |
| Cartlidge | 1,997,247 | Apr. 9, | 1935 |
| Arentzen | 2,298,448 | Oct. 13, | 1942 |
| Holstein | 2,326,857 | Aug. 17, | 1943 |
| Doberstein | 2,384,083 | Sept. 4, | 1945 |

Claims 1 and 42 are illustrative:

"1. In a loading machine, the combination with a main frame, of an elongated

working run, while maintaining uniform tension of the endless conveyer. The two front wheels have individual drive motors which are reversible to propel the machine in forward or rearward direction, the wheels being in parallel planes at such time. These wheels, however, have shiftable mountings and can be swung about vertical axes through almost 90° and locked in such position that, on proper direction of drive, the front end of the vehicle can be caused to move directly to the right or left.

"The rear end of the vehicle may be supported on a pair of vertically adjustable steering wheels, during travel; but for loading operations the rear end of the telescopic conveyer frame is usually pivotally anchored at the desired discharge point, and the steering wheels are elevated from the ground. Then the forward section of the conveyer with its gathering head can be advanced by its extending mechanism, forcing the gathering head into the coal to load and convey it to the discharge point. After such attack, the front section can be retracted, and by proper manipulation of the traction wheels can be swung about the anchor point to other angular positions for repeated frontal attack on the pile of coal, until a wide area is cleared."

The patent to Holstein, the basic reference, relates to improvements in self-loading devices for shaker conveyers of the type utilized in a mine for picking up material, such as loose coal. The forward portion, which has an extensible trough with a shovel for picking up the loose material from the ground, is adjustably mounted on a pair of laterally-spaced traction wheels, which may be moved either in a longitudinal direction or caused to swing transversely from side to side. An extensible reciprocating conveyer extends backwardly from the shovel. The rear end of the device is mounted on wheels for movement about the mine and is adapted to be held in fixed relation to the ground by suitable jacks, or the like, during the loading operation.

The respective patents to Jamison and Burnell disclose improvements in coal-loading machines whereby the forward and rear ends thereof are connected by an endless conveyer system, adjustable in length, so that the forward end of the device may be extended or retracted. The patents to Cartlidge and to Joy, respectively, show coal-loading machines which, among other things, comprise laterally-spaced coal gathering means at the forward end.

The patent to Arentzen discloses a shuttle car especially adapted for use in gathering and loading coal at the working face of the usual room and pillar system of an underground mine. The car comprises, among other things, a wheeled body and a conveyer operating over the floor of said body for moving coal from one end of the car to the other. The car is so mounted that it and the conveyer may be driven as a unit for operation anywhere in the mine or for transporting the loaded material to the unloading station where the load may be readily emptied from the car. Mechanism is attached to the body of the car to vary the discharge end thereof and for maintaining the conveyer in position at all operable elevations.

The patent to Doberstein discloses a rubber-tired kerf-cutting machine which is mounted to feed the machine and a rigid cutter bar longitudinally into the coal of a mine room and transversely thereacross, together with independent power operated mechanism for driving the supporting wheels in all positions of adjustment about their vertical axes.

The specification filed by appellant includes more than 50 pages of printed text. There are many more pages of schematic drawings together with 326 enumerated elements. Ninety-seven claims have been involved one way or another during the prosecution of appellant's application in the Patent Office since April 10, 1944. His device, however, is a powerful machine having hydraulic and electrical equipment, push button controls, and other elements not only designed to synchronize multiple operations but also to rapidly complete the loading and removal of large quantities of coal from a mine.

The examiner cited 15 different references, none of which disclosed the specific construction here claimed. The examiner summarized his position in the expressed

view that while appellant's disclosure presented patentable invention, his claims failed to define that invention. However, his rejection of claims 8, 91, 92, 93, 94, 95, 96, and 97 as unpatentable over certain art of record was reversed and those claims were allowed by the board. Other rejected claims were not appealed.

The examiner rejected appealed claims 1, 2, and 3 as lacking invention over the disclosure of the patent to Holstein in view of the additional disclosures of the patents to Jamison or Burnell and either of the patents to Cartlidge or Joy. In respect to those three claims, the board found the disclosures of Burnell and Joy cumulative to those of Jamison and Cartlidge, and accordingly held: "* * * that it would not involve invention to substitute the extensible endless traveling conveyer shown in the Jamison patent for the extensible shaking type conveyer of the Holstein loading machine and the gathering head of the Cartlidge patent with its laterally spaced coal gathering means for the gathering head of the Holstein machine, this head being in the form of a simple shovel."

The examiner rejected appealed claims 42 and 43 as drawn to an old combination in view of the respective disclosures of the patents to Holstein, Doberstein, and Arentzen. The board affirmed this rejection for the reasons stated by the examiner.

The board discussed the examiner's rejection of claims 86 and 87 as "indefinite" and pointed out wherein the device defined by the limitations of those two claims was neither at variance with appellant's structure defined by his specification nor were the two claims subject to rejection on the ground of indefiniteness as applied by the examiner. The board nevertheless rejected claims 86 and 87 as unpatentable over the art of record relied upon by the examiner in his rejection of claims 1, 2, and 3.

Appellant protests here that the tribunals of the Patent Office defaulted in their duty in the instant case in that they have not explained, for example, how any skilled mechanic having the art of record before him could, without exercise of the inventive faculty, reorganize the basic reference, Holstein, by substituting disclosures in the secondary references, say, of "the extensible endless traveling conveyer shown in the Jamison patent for the extensible shaking type conveyer of the Holstein loading machine."

Whenever any of the claims for a patent is rejected by the commissioner, or by the tribunals of the Patent Office acting for him, the applicant shall be given, briefly, the reason of such rejection, together with such information and references as may be useful to him in judging the propriety of renewing his application or of altering his specification.[1]

The Solicitor for the Patent Office has correctly pointed out in his brief, and cited authority to the effect, that it is not necessary in order to make a valid combination of references to prove that a part of one device may be physically inserted into another, where the cited references suggest the modification in such a way that any person skilled in the art could make it.[2] On the other hand, appellant cites authority of this court,[3] and of the Board of Appeals of the Patent Office,[4] to the effect that a basic reference and additional references having features somewhat analogous to those disclosed by appealed claims, which require material and radical modification in order to conform to appellant's claims, are not valid references unless they show an equivalent and operative combination which obviously could be substituted to meet the appealed claims by any skilled mechanic.

There is no yardstick by which the courts or the tribunals of the Patent Office may affirmatively determine whether that which is disclosed by an application for

1. R.S. § 4903, 35 U.S.C.A. § 51; International Standard Electric Corp. v. Kingsland, 83 U.S.App.D.C. 355, 169 F.2d 890.

2. In re Ewald, 26 C.C.P.A., Patents, 1312, 104 F.2d 622; In re Merkle, 32 C.C.P.A., Patents, 1151, 150 F.2d 445; In re Stover, 32 C.C.P.A., Patents, 823, 146 F.2d 299.

3. In re Joseph Dawe, 19 C.C.P.A., Patents, 728, 53 F.2d 543; In re Arter, 32 C.C.P.A., Patents, 882, 147 F.2d 701.

4. Ex parte Williams, 51 U.S.P.Q. 92, 93.

a patent constitutes invention or merely the work of a mechanic skilled in the art.[5] The function of a patent is to add to the total stock of useful knowledge. When that result is achieved, an inventor or discoverer is rewarded therefor in his particular field with a limited monopoly. Claims for a new combination of old elements which, when assembled, effect no change in their respective functions define no invention, however, since such a combination, if patented, would withdraw into the field of its monopoly resources freely available to every person skilled in the art.[6]

Before any inventor shall receive a patent for a machine, he shall not only explain the principle thereof and the best mode in which he has contemplated applying that principle, but, so as to distinguish his machine from others, he shall also particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention.[7]

■■ One claim may be sufficient to meet the prescribed requirements of the statute.[8] Undue prolixity in the presentation of claims has been universally condemned.[9] In such a case the Patent Office may refuse to consider the application and reject all of the claims on the ground of multiplicity. This court has encouraged such practice to prevent the imposition of intolerable burdens on the tribunals of the Patent Office.

■■ On the other hand, considerable latitude has been allowed the applicant for a patent in determining what is necessary for the full protection of his patent rights,[10] and in the case of claims for a combination, where the individual features of the combination can be met only by unusual modification of features found in the prior art, thereby causing doubt on the question of patentability, courts have been accustomed to resolve such doubts in favor of the applicant. In re Pappas et al., 38 C.C.P.A., Patents, 746, 758, 185 F.2d 695. In the last analysis, the applicant in the present case had reduced the number of his claims to reasonable limits, and there was no rejection by the Patent Office on the ground of multiplicity.

■■ The examiner in his painstaking statement made no rejection of claims 86 and 87 as unpatentable over the prior art of record and the board gave no justifiable reason for its action in effecting that result. Moreover, in view of the teachings of the authorities hereinbefore cited, appellant appears to be clearly entitled to the allowance of those claims as well as claims 1, 2, and 3. None of the cited references shows the full equivalent of the combination defined by those five claims. Also the basic reference, Holstein, known in the art as having a shaker conveyer, operates on a different principle from that claimed by appellant. The basic and secondary references, although somewhat analogous, contain no suggestion as to how an operative combination could be accomplished by substituting, say, "the extensible endless traveling conveyer shown in the Jamison patent for the extensible shaking type conveyer of the Holstein loading machine."[11]

There can be no denial that the precise equivalent of the particular combination set forth in claims 42 and 43 is not found in the art of record. The particular arrangement of the elements defined by those claims appears peculiarly applicable to conveyers and not to vehicles generally. The limitations of the two rejected claims define structure which finds a special and principal utility in a loading machine which includes a conveyer. Such claims, under

---

5. In re Rolph, 26 C.C.P.A., Patents, 1066, 1069, 102 F.2d 873.

6. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

7. R.S. § 4888, 35 U.S.C.A. § 33.

8. In re Newton, 38 C.C.P.A., Patents, 877, 187 F.2d 337; In re Einstein, 18 C.C.P.A., Patents, 885, 46 F.2d 373; In re Prescott et al., 51 App.D.C. 281, 278 F. 590.

9. In re Buttolph, 22 C.C.P.A., Patents, 973, 75 F.2d 629; In re Scharf, 33 C.C.P.A., Patents, 1079, 155 F.2d 734.

10. In re Wood et al., 33 C.C.P.A., Patents, 984, 155 F.2d 547; In re Mays, 36 C.C.P.A., Patents, 1188, 175 F.2d 570.

11. In re Arter, 32 C.C.P.A., Patents, 882, 147 F.2d 701.

the authorities, should not be rejected on the ground of old combination, since patent claims may be sustained in a proper case because of the fact of combination rather than the novelty of any particular element.[12]

For the reasons stated, the decision of the board is reversed.

Reversed.

12. Faulkner v. Gibbs, 338 U.S. 267, 268, 70 S.Ct. 25, 94 L.Ed. 62; Williams Mfg. Co. v. Shoe Mach. Corp., 316 U.S. 364, 369, 62 S.Ct. 1179, 86 L.Ed. 1537; Ex parte Gulliksen and Dawson, 47 U.S.P.Q. 153; Ex parte Woodall, 40 U.S.P.Q. 131; Ex parte Barrows, 34 U.S.P.Q. 301; In re Nelson et al., 30 C.C.P.A., Patents, 1257, 137 F.2d 106.