41 C.C.P.A.(Patents)

**Application of CARTER.**

**Patent Appeal No. 6053.**

United States Court of Customs
and Patent Appeals.
April 9, 1954.

———◆———

Albert F. Robinson and Des Jardins,. Robinson & Keiser, Cincinnati, Ohio (Watts T. Estabrook, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

O'CONNELL, Judge.

This appeal involves two claims numbered 35 and 36 in appellant's application for a patent on an elastomeric strip for vertical pavement joints and pertains more particularly to such a strip having sealed air pockets therein. Claim 36 is illustrative:

"36. A concrete construction comprising spaced-apart concrete slabs having inserted in the space therebetween a non-sectional strip of resilient elastomeric material, said strip consisting of a body portion of a height to fill the joint space and formed with a plurality of web separated longitudinal channels which are closed at the opposite ends of the strip, lateral extensions on the opposite faces of said strip, co-extensive with the length of the

strip, and means on the lateral extensions for anchoring them to the ends of the adjacent concrete slabs, said lateral extensions having at least a portion thereof substantially in a horizontal plane that intersects one of the longitudinal channels."

The references relied upon are: Weiss 1,628,090 May 10, 1927; Gammeter 2,071,299 Feb. 16, 1937; Fischer 2,111,113 Mar. 15, 1938; Dewhirst et al. 2,156,681 May 2, 1939; Fischer 2,400,493 May 21, 1946.

The subject matter defined by the two rejected claims, which stand or fall together, is a resilient joint sealing strip of novel construction for tying-in slabs of concrete in the pavement of roads.

The Solicitor for the Patent Office described the disclosure upon which appellant relies to endow the claims with patentability. We reproduce the description herewith, but since it is not expedient to likewise reproduce the drawings, the solicitor's numerical references thereto, and to the record, are here omitted:

"* * * The subject matter of the appealed claims is directed to the sealing strip comprised of an elastomeric, resilient, and tough material having a bottom edge resting on the roadbed, [two] side faces against which the compression forces of the expanding concrete slabs are directed, and a top edge which shows from the surface of the concrete road as the top edge of the vertical sealing strip. Parallel with the length of the strip near its top edge are beads associated with [the said two side] faces respectively, the beads being connected to the body of the strip by necks. Air channels are provided in the strip from end to end thereof, the channels being parallel and fit close together so as to provide a maximum volume of air within the strip. The channels are shaped in cross-section in such manner that side pressure exerted on the sides of the strip will tend to collapse the channels so that the inter-channel webs between them will fold without horizontal resistance. The ends of the channels are sealed, and the dowel bar openings therein are likewise sealed, providing a strip, which after being assembled in the road construction is sealed air-tight and water-tight, the compressibility of the air in the channels creating sufficient force outwardly to cause the strip to form a perfect water-tight seal with the concrete and the side plates."

The final letter of the examiner made this pertinent comment reproduced here, omitting numerical reference to various figures of the drawings:

"The two claims on appeal essentially include the expansion joint strip which is adapted to bridge the joint space between concrete slabs. The expansion joint strip as recited is made up of resilient elastomeric material and has a plurality of web separated longitudinal channels each of which is closed at its ends. The side walls of said strip are provided with [two] laterally projecting anchoring ribs disposed in a horizontal plane intersecting one of the channels to minimize resistance which may possibly be exerted by the separating web to lateral movement due to expansion forces."

It may be noted that earlier in the prosecution of the application both of the appealed claims were deemed allowable. Subsequently the patent to Fischer, 2,400,493, the principal reference, was cited by the examiner.

The disclosure thereof related to an expansion joint for sections of masonry, defining a gap therebetween. The primary object which Fischer sought was to insure such a joint against the admission of seepage and moisture therethrough, which tended to open the crevices between the filing core and the masonry during the contraction of the masonry under a drop in temperature.

The structural or operative principles and advantages contributed by Fischer

which are particularly pertinent here was thus described in his specification, numerical references to the drawings being here omitted:

"For instance, auxiliary anchoring plates with their apertures that permit interlocking with the concrete, have their inner longitudinal margins fashioned into enlargements which contribute fixed anchorages within the relatively large core so that while the wings are free to yield by vertical compression and the reenforce plate by flexure, under stresses arising from vertical relative movement of the concrete sections, it is not necessary for them to yield in the direction of tension because of the interior opening in the core which permits the side walls of said core to arch outwardly under contraction of the masonry sections."

The solicitor in his brief observes that in this reference, as defined and supported by certain excerpts from the specification, "The expansion joint of the patent is of the type in which deformable cores are employed to fill and exclude dirt and moisture from the spaces conventionally left between the sections of masonry of such joints, and, in addition, has a waterstop apron having its ends anchored in the masonry sections." Moreover, the core sections of this reference are made of material which is inherently cellular or resilient, such as sponge rubber, etc.

The patent to Weiss relates to the use of elastic sheets, slabs, or plates in the construction of foundations for machinery, engines, buildings, etc., not only for the purpose of reducing vibration but also for insulating sound. The object of his invention is achieved by so constructing the material as to provide inclined ribs on opposite sides thereof, so that a load resting thereon not only compresses the material and tends to flatten it out but also imposes primarily a bending stress whereby the material bends over certain portions of the sheet, which may be ribs, bosses, webs or the like.

The patent to Gammeter relates to yielding joints for roadways made of concrete to allow for expansion and construction of the sections thereof by maintaining the road surface at the joint substantially unaffected by changes in temperature. A hollow strip of elastic sealing material, such as rubber with projecting side ribs, is provided having therein a metallic spring means for expanding the strip.

The patent to Dewhirst et al. was cited to show that resilient strips which utilize web separated channels between rigid members are old in the art of paving or wall structures, which are subject to expansion and contraction.

The original patent to Fischer, 2,111, 113, relates to sponged sheet material and pertains particularly to compressible and elastic material or material which will expand upon release of a compressing force. The invention generally described by the patentee is a floor planking or expansion joint strip comprising an envelope or casing of rubber or the like, having a plurality of sponged rubber layers inserted therein. Omitting the numerical references to the drawing, Fischer further states in his specification:

"The sponge layers contain myriads of cells filled with air which becomes entrapped within the casing upon insertion of the layers to make them sluggishly yieldable. As a result, a more or less solid character is provided throughout the strip, giving it the appearance of solid rubber, yet being inherently compressible and elastic to a degree approximating that of sponge rubber. To give the strip a maximum degree of rigidity, numerous sponge rubber layers are inserted and separated from each other by walls integrally formed with the casing.

"If the planking be used for flooring, one face may advanta-

geously be coated with a paint layer of any desired color."

The claims were rejected by the Primary Examiner on two grounds: namely, (1) "as unpatentable over Fischer 2,400,-493 in view of either Weiss, Dewhirst, or Fischer 2,111,113 and when further considering the state of the art as indicated by Gammeter"; and (2) as unpatentable over Fischer 2,111,113 in view of Fischer 2,400,493. The examiner's opinions were briefly summarized by him in the following paragraph which we reproduce so far as pertinent and without reference to the drawings:

"Resilient strips which utilize web separated channels are old in the art as shown by either Weiss, Dewhirst, or Fischer 2,111,113. No invention is seen in extending the vertical height of the strip in Fischer 2,400,493, * * * by a repetition of web separated channels of either Weiss, Dewhirst or Fischer 2,111,113. The essence of the invention as recited in claims 35 and 36 is in providing anchoring flanges in line with a channel and this feature is anticipated by Fischer 2,-400,493, * * *. To seal the ends of a channel does not constitute a patentable departure as substantiated by Gammeter."

The Board of Appeals, after delineating the respective rejections of the examiner, held that such rejections nowise disclosed reversible error and on that basis affirmed the action of the examiner.

The concurring decisions of the Patent Office are based upon their fundamental conclusion that any person skilled in the art, with the references of record before him, could, without the exercise of the inventive faculty, make the combination of elements defined by appellant's claims 35 and 36. The board in support of its position cited In re Milne, 140 F.2d 1003, 31 C.C.P.A., Patents, 918.

■ In the case of In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823, this court held, as defined in the headnotes,

that a valid patent may issue for a new combination of old elements where the faculty of invention is exercised in combining them to bring about a new mode of operation which produces a new and useful result. The concept of modifying or combining features of the prior art to produce unobvious and unexpected results likewise may have patentable significance even though little more than mechanical skill was needed for the embodiment and application of the concept. In re Holt, 162 F.2d 472, 34 C.C.P.A., Patents, 1129; In re Osplack, 195 F.2d 921, 39 C.C.P.A., Patents, 932.

■ Twelve claims covering the invention defined in appellant's application have been allowed, but no reason is suggested which prohibits the allowance of the appealed claims on an independent basis, provided the subject matter thereof is patentable over the cited art. Whenever claims for a patent are rejected by the tribunals of the Patent Office, the reasons for their action, and the pertinence of the references, if not obvious, must be clearly explained to the applicant. In re O'Keefe, 202 F.2d 767, 40 C.C.P.A., Patents, 879; In re Lee, 193 F.2d 186, 39 C.C.P.A., Patents, 752; International Standard Electric Corp. v. Kingsland, 83 U.S.App.D.C. 355, 169 F.2d 890.

Appellant concedes in his brief that he was not the first inventor to put interlocking extensions on the opposite faces of a channeled filling strip for a joint space. He urges, however, that he was the first to do so on an expansible filling strip which filled the entire joint space and was channeled throughout its height so that the entire joint filling strip could be made integral without the need of other strips in addition to and independent of the interlocking channeled strip. Fischer 2,400,493, as the solicitor points out, shows interlocking extensions upon a channeled joint strip to be old. Appellant's position is, however, that more is involved in his claimed joint strip than merely integrating the different strips of Fischer 2,400,493:

"The invention involves forming all of said strips of elastomeric material and then channeling and integrating them so as to provide a water stop throughout the entire height of the joint space, without any means present to impair the hermetic seal formed by the water stop. The objective is not merely filling the entire joint space, but providing and maintaining a water stop throughout the entire height of the joint space. The claims here involved are not for any of the elements *per se* but for a novel combination of old elements modified for cooperating together. * * *"

There is no doubt that appellant as disclosed by the record has produced a new and useful result by carrying forward features selected from the cited prior art and incorporating them into a single structure wherein such features perform their usual functions unmodified by the presence or absence of other features. Under these circumstances there is no novel combination but only an aggregation of old elements which constitutes no patentable invention. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; In re Gaetke, 201 F.2d 948, 40 C.C.P.A., Patents, 800; Seiberling Rubber Co. v. I. T. S. Co., 6 Cir., 134 F.2d 871. The question here is not what Fischer did, but whether any person skilled in the art, with the references of record before him, could, without the exercise of the inventive faculty, make the combination of elements here claimed. In re Dalzell, 152 F.2d 1013, 33 C.C.P.A., Patents, 808. See also In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939. We are convinced that he could.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, sat for GARRETT, Chief Judge.