51 CCPA
**Application of Everett F. GUSTAFSON.**
**Patent Appeal No. 7204.**

United States Court of Customs
and Patent Appeals.
May 21, 1964.

Marshall A. Burmeister, Chicago, Ill., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–8 of application serial No. 810,432, filed May 1, 1959, for Device for Storing and Displaying Cards. No claims are allowed.

██ This is an unusual case. The examiner cited no prior art references. He rejected all claims as "aggregative." The board, after considering at length appellant's arguments based on alleged claim limitations, affirmed this rejection "on the basis of the scope of the claims." At the very end of its opinion it appended a footnote noting that the examiner had cited no reference and saying that in the absence of references it "is difficult to determine the ultimate question of patentability." The board then called attention to four references evidently found as a result of its own search. The board, however, did not overtly rely on any of the references. Appellant requested reconsideration, noting the deficiencies of the references,

which are not included in the record before us, and properly so since they were not relied on, asking reconsideration by the board of its decision "and modification thereof to advise the applicant of subject matter patentable in accordance with the record of prior art before the board." Appellant there argued particularly the patentability of claims 4 and 8. (All claims are appended to this opinion as an appendix.)

In its second opinion, on the petition, the board denied the petition but in doing so, at least as to claim 4, said that that claim "does not define the invention with the particularity required by paragraph 2 of section 112." With respect to claim 8, the board adhered to its previous decision that it defined nothing patentable, adding that it was not convinced that the claim "defines more than a convenient and *obvious* location of elements in space which otherwise would be wasted." (Our emphasis.)

Appellant's brief states that the rejection on appeal is "on the ground of aggregation in the sense of an unpatentable combination as defined in In re Worrest," 201 F.2d 930, 40 CCPA 804, and with this the Solicitor agrees. Appellant further states that "A rejection on aggregation in the sense of unpatentable combination is essentially a rejection on obviousness," citing In re Troiel, 274 F. 2d 944, 47 CCPA 795, and In re Carter, 212 F.2d 189, 41 CCPA 851. The solicitor does not agree that this is necessarily so, saying that the aggregation rejection can be said to be based on 35 U.S.C. § 101, "since such a combination is not an invention which can be patented," and that furthermore section 112 is involved as is evident from the board's discussion, citing In re Wright, 256 F.2d 583, 45 CC PA 1005.

As is not unusual, we thus start off with considerable confusion as to just what is the legal basis of the rejection. With the examiner it was merely "aggregation"; with the board it was aggregation with mention, only after petition for rehearing, of 35 U.S.C. § 112; with the solicitor it is in part a rejection

for obviousness (which of course involved 35 U.S.C. § 103), in part a rejection based on 35 U.S.C. § 101, and 35 U.S.C. § 112 is "involved." The only rejection we are asked by him to affirm, however, is that "holding the appealed claims unpatentable on the ground of aggregation."

We shall return to a consideration of the basis of the rejection after a consideration of the facts on which, of course, all else depends.

What appellant discloses as his invention is a device for filing business calling cards. Admittedly an old type of rotary file is employed. This file has a rectangular base and four flat walls forming a rectangular box open at its top. Centrally of the two side walls near their tops a shaft is journaled and provided exteriorly of the box with turning knobs. Inside the walls a half-cylindrical cover with closed sides and a forward lip is rotatably mounted on the shaft. When closed, the lip rests on the front wall and when open the lip rests on the back wall. The card-holding part of the filing device consists of a cylindrical spindle fixed on the shaft and provided between its ends with a disc which extends radially outward, its periphery being in the form of a circular rib. If a card is provided with a keyhole-shaped opening which extends to one edge, it can be mounted on the disc with the rib in the larger part of the hole, the slot extending therefrom accommodating the disc. Turning the knob brings the cards on the spindle into view as desired.

What appellant did in making his invention was to add to the old file a punch with which to make openings of the necessary shape in calling cards received, of course, in an unpunched condition. While admitting that there is no novelty merely in punching suitable holes in cards for mounting them on a file such as that described, appellant argues that the punch disclosed by him possesses novelty, considering the manner in which the punch is constructed *and integrated with the filing device.* Novelty is not questioned, nor utility.

It will be appreciated that when the half-cylindrical cover of the file is open it occupies most of the space within the housing, leaving only the front and rear lower corner portions of the rectangular housing empty. Appellant builds the punch into the "waste space" of the front corner portion. Molding some ribs on the base of the housing, he mounts a punch thereon and makes a hole in the base through which punchings can drop. The punch is a simple device consisting of a flat base plate to which an overhead arm is pivoted, a spring urging the arm upwardly. The arm carries a die to punch a hole of proper shape and the die cooperates with an opening in the plate. The arm is longer than the plate and protrudes from the front wall of the housing through a vertical slot. In line with the punch base plate the front housing wall also has a horizontal slot, into which the vertical slot opens, through which cards to be punched can be inserted. Two pins on the punch plate act as stops, determining the degree of permissible insertion.

Certain features are of importance to appellant's inventive concept, beyond the bare idea of locating the punch in the waste space in the front of the housing. The ribbed disc on the spindle which holds the cards is centered on the spindle. The punch dies are centered on the punch and the punch is centered in the housing. The slot through which cards are placed in punching position is no wider than the space available inside the file between the side walls of the cover, which is the length of the spindle. Therefore, a card which will go through the slot will necessarily fit in the file; either end of the horizontal slot can be used as an edge guide in punching the card or the card can be centered in the slot, which will center the punched hole and center the card when it is placed on the spindle. By thus building the punch into the slotted housing, the housing thus becomes an integral part of the punching device and at the same time, in its card-guiding function, the housing enables the cards to be punched in the proper location for positioning on the spindle of the filing device, all of which is, no doubt, in the words of In re Worrest, supra, a matter of "inherent correlation, or cooperation, or coordination of elements which mutually contribute to a common purpose or result, other than mere convenience due to juxtaposition or collection of the units in a common setting."

Our description, just given, of the important features is what we are able to comprehend from the specification, *not necessarily structure adequately defined in the appealed claims.* We note that one of appellant's main points about correlation, cooperation, and coordination in his device assumes an alinement between his punch and the spindle disc which holds the punched cards.

In discussing and affirming the rejection for "aggregation," the board put its finger on the gist of the problem developed by the opposing arguments of the examiner and the applicant in these words (our emphasis) :

> "While appellant has *disclosed* a device having the attributes listed above, it is important that the *claims* should include the features, characteristics and relationships which produce the alleged results."

In answer to appellant's arguments that his claims did define a combination producing new and unexpected results, including utilization of the housing as a guide for the punch, which also excluded cards too big for the file and assured the punching of the hole in the right place for use in the file, the board concluded that the *claims were defective,* in defining what appellant argued they defined, *in failing adequately to limit the location or relative size of the slot or point out the alinement necessary between punch and spindle disc.* "On the basis of the *scope* of the claims" (our emphasis), the board therefore affirmed the rejection of the claims as "aggregative" or "for an aggregation." They were definitely *not* rejected for failing to define the invention as required by section 112.

Much reliance in this case is placed on what this court said in 1953 in In re

Worrest, a case argued before the effective date of the Patent Act of 1953 and giving no recognition to the existence of that act. The opinion therein is something of a classic on the subject of what did or did not constitute "aggregation," referred to as the "doctrine of aggregation." The opinion begins by saying "the question of what constitutes an aggregation in the patent law has been a troublesome one" and refers to the view of the late Judge Learned Hand in Sachs v. Hartford Electric Supply, 1 Cir., 47 F.2d 743 (1931), that he was unable to attach a definite meaning to the term. The opinion says further that a large number of cases had been reviewed and were found to be in conflict. The term "aggregation" was found to have been used in two different ways: (1) to refer to a device having two or more unrelated, independent units or elements, each of which performs separately, uninfluenced by and indifferent to the action of the other unit or units; (2) to refer to devices which appear to be a combination of two or more units coacting or cooperating in the full sense of the term, but which the court regarded as "not displaying the exercise of invention" because no new or unexpected result was produced by the combination. In the face of the situation as thus analyzed, the court concluded that meaning (1) seemed to it to be "the correct use of the term."

At this date it is difficult to see why either meaning should have been selected as "correct," since both had long been in current use, except on the basis of an assumption that the selection would have a decisive effect on the issue before the court, which, indeed, it did have. Adopting the first meaning and finding that in the device before it there was "correlation or coordination resulting in the achievement of a single or common purpose" the court reversed the rejection of the claims as drawn to an aggregation, whatever the Patent Office may have meant by that term as used in making the rejection.

Whatever meaning may be attributed to "aggregation," it has become a term of art in patent law to connote something which is *not* patentable. In parallel or opposition to it is the word "combination" which connotes something which either is deemed to *be* or which *may* be patentable, depending on the tribunal using the term. Worrest recognized *un*patentable "combinations" as being those combinations which did not display "the exercise of invention," preferring, however, not to call them aggregations. The term appears to have got into the law about 1873 in Hailes v. Van Wormer, 87 U.S. (20 Wall.) 353, 22 L.Ed. 241. See Curtis On Patents § 111c (4th ed. 1873); Walker On Patents § 32 (1st ed. 1883), § 70 (6th ed. 1929), § 42 (Deller ed. 1937); Merwin, Patentability of Inventions § 20 (1883). Compare Robinson On Patents § 154 (1890). As these texts show, from the earliest time aggregation has been but one aspect of the problem of what constitutes "invention." Merwin explains how it was regarded very concisely in section 115, the second in his chapter entitled "Combination." He said (our emphasis):

> "When we come to consider the nature of a patentable combination, we find it very difficult to obtain a definition which will fit all cases. It is commonly said that *a combination, as distinguished from an aggregation, is patentable.* The one is a union, the other an assemblage, of elements. Co-action is the badge of the first; mere juxtaposition is the badge of the other.

> "For instance, in Reckendorfer v. Faber [92 U.S. 347, 23 L.Ed. 719 (1875)], a leading case, the patentee had joined together a lead-pencil and a rubber-eraser by making a groove in one end of the pencil for about a quarter of its length, and glueing the rubber therein. The court held that this was a *mere aggregation.*"

In the latter case the Supreme Court majority said, "This, however, is not invention within the patent law" and held the patent invalid for want of "invention." (Three justices dissented.) Thus did the doctrine continue down through the

years. Toulmin in his Invention and the Law § 57, entitled "Aggregation," (1936) said:

> "Aggregation is the antithesis of combination, in the subject of invention. A combination is invention because the result of the combination is greater than or different from the sum of the results of the independent parts or independent steps of a process. On the other hand, aggregation is an association of parts or steps of a process in which the ultimate result is no more than the sum of the results of the several parts if used in some other association or independently one of the other."

While we have recently depreciated thinking along similar lines about what makes a combination patentable, In re Menough, 323 F.2d 1011, 51 CCPA 741, we quote this passage to show typical usage of the "aggregation-combination" terminology. See also Rivise and Caesar, Patentability and Validity § 127 (1936):

> "If the elements do not coact in a *patentable* manner, their union is said to be 'an aggregation,' or a mere collocation of elements as opposed to 'a combination.'" [Emphasis ours.]

The courts have had plenty of difficulty with these concepts, as much, almost, as with the broader problem of what constitutes "invention." The Circuit Court of Appeals for the Tenth Circuit found intellectual aid in thinking, by way of analogy, of a ₁ootball team as a "combination" and a track team as an "aggregation." The former worked to a common end, to advance the ball, while the latter, though working in common to amass points for alma mater, did so without "the vital spark of co-operation or co-ordination." Skinner Bros. Belting Co. v. Oil Well Improvements Co., 54 F.2d 896 (1931).

On January 1, 1953, all of this mental anguish ceased to be necessary. The test of the presence or absence of "invention," and along with it the subsidiary question of whether a device or process was or was not an "aggregation," or a "combination," or an "unpatentable combination" for want of "invention," was replaced by the *statutory test* of 35 U.S. C. § 103.

When claims have not been rejected for want of novelty or utility, the principal remaining questions are whether they define subject matter which would not have been obvious, at the time the invention was made, to one of ordinary skill in the art, and whether they define it in such manner as to comply with 35 U.S.C. § 112.

The only rejection specifically made here is that the claims are "aggregative." As is manifest from the solicitor's brief, this is not such a clear rejection as an applicant is entitled to within the spirit of 35 U.S.C. § 132 and under Patent Office Rule 104(b). That brief makes the following statements about the rejection:

> "There is agreement that the appealed claims stand rejected on the ground of aggregation in the sense of unpatentable combination as defined in the Worrest decision * *. However, it is not agreed that such a rejection *is* (*necessarily*) essentially a rejection on obviousness * * *. The rejection on aggregation in the sense of unpatentable combination can be said to be based upon 35 USC 101, since such a combination is not an invention which can be patented * * *. Furthermore, it would appear evident from the Board's discussion * * * of the deficiencies in some of the claims, particularly claim 4, that Section 112 is involved * * *.

> "* * * appellant has not responded to the Board's holding * * * that the claims are deficient relating to the position of the punch * * *. It is evident that the claims do not contain a recitation of structure to provide specific alignment of the punch with the disc portion. Thus, though the elements are re-

cited, there is no limitation adequately setting forth their relationship which is vital to their performing as alleged, and to their patentability. The essential relationship of cooperation being missing, the claims must fall as merely reciting an unpatentable aggregation * *.

"The aggregation rejection in this case may also be considered as a rejection on obviousness, as indicated by the Board's treatment of claim 8 * * *. However, the Board did not cite references on the issue of obviousness but relied on common knowledge * * *. * * * it is submitted that the advantages argued by appellant * * * result merely from the use of mechanical skill in juxtaposing separate old elements, or from an obvious combination of such old elements."

In view of the varying interpretations and applications which the solicitor has put on the single rejection, we consider this rejection based on "aggregation" to be bad for indefiniteness.

By the time the Patent Office position has been elucidated in the second opinion of the board, and with the benefit of the briefs and arguments in this case, it becomes reasonably clear to us that the real objection to the claims here, never clearly stated or used as a ground of rejection, is that the claims fail to define the invention disclosed by appellant with sufficient particularity and distinctness to comply with the second paragraph of section 112. This was hinted at by the board and the particular defects in the claims were to some extent indicated.

It does not appear ever to have been the considered opinion of the examiner or of the board that the disclosed *invention* is an unpatentable aggregation (or combination) of elements (note our quotation from the board's opinion above)

but only that the *claims* are bad as "aggregative," whatever that may mean, *because* they lack certain necessary limitations in order properly to define the disclosed invention. Appellant has been claiming *at* his disclosed invention all along but we doubt that it has ever been made clear to him just where he has failed to comply with the law.[1]

This case presents a situation similar to that before this court in In re Worrest in which, with respect to certain claims, the court said:

"In view of the foregoing, we think the board erred in affirming the rejection of claims 7–9 as drawn to an aggregation. However, the record does not in any way indicate whether the Patent Office tribunals have considered various other pertinent questions with respect to claims 7–9. Firstly, it is not clear whether they regarded the subject matter of the claims inventive over the prior art, or within the realm of mechanical skill. Moreover, assuming the office tribunals regarded the physical embodiment as inventive, it is essential that the claims adequately recite the features upon which appellant predicates patentability. * * It is also essential that the claims not be objectionably indefinite or functional. * * * we think that, in view of the present state of the record, the only proper procedure is to remand the case to the Patent Office as to claims 7, 8, and 9, for further proceedings not inconsistent with the foregoing opinion."

For similar reasons apparent in this case, we think we should follow the same procedure here and remand so that the Patent Office can properly state the true ground of rejection, including the statutory basis thereof, and appellant

1. We of course appreciate that the examiner, and perhaps the board, by assuming a particular meaning for the terms "aggregative" and "aggregation" may have had a definite ground of rejection in *their* minds. But considering the obvious fact that the terms are sufficiently ambiguous to have all the meanings ascribed to them in the solicitor's brief, it cannot be assumed that that meaning was *communicated* to the appellant.

can have a proper opportunity to meet them if he can.

We are further persuaded that this is the proper course by a recent address by the new Commissioner of Patents to the Patent Office professional staff on April 6, 1964, wherein he said (p. 2 of the copies distributed [2]):

> "The main operations of the Patent Office are, of course, the examination of patent applications and *the granting of patents on patentable inventions.* Promptness of examination is an important element of our work. Further, in addition to our responsibility of protecting the public by refusing to grant patents on *unpatentable inventions,* we should also make it our job to *assist the inventor or his attorney in a positive manner to arrive at proper claims covering his invention where the invention is patentable, and I wish to request that we give greater emphasis in the future towards fulfilling this key function.*" [Our emphasis.]

It has not appeared in this case that the disclosed invention is unpatentable. Another interesting fact in the case is that the application was filed May 1, 1959, and the final rejection is dated December 16, 1959. While it is encouraging to see such speed, the legal issues herein do not appear to have been properly and definitively developed, one reason for this being that the rejection was not made under the existing statutes but, rather, under older concepts and terminology less concise and certainly more ambiguous than the statute. Appellant was entitled to know whether his claims were rejected under section 101, or 103, or 112. Admittedly he was given a rejection which the solicitor says could be based on any or all of those sections but not told this until the solicitor filed his brief in this court. Even now we are unable to see what bearing section 101 has on the question. There remain the possibilities that the claims do not define the invention claimed at with the particularity required by section 112, that what the claims do define is obvious, and that the invention sought to be claimed is obvious. Possibly there is relevant prior art.

The decision of the board affirming the sole rejection of the claims "as being for an aggregation" is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

Reversed and remanded.

## APPENDIX
### Claims

1. A device for storing and displaying cards comprising a housing having a rectangular base and four walls extending normally from the edges of the base, the first of said walls having an elongated slot therein parallel and adjacent to the base to permit a card to be inserted into the housing, the second and third walls of the housing being on opposite sides of the base and having openings therein on an axis parallel to the base and first wall, a spindle journaled within the openings of the second and third walls, said spindle having a cylindrical portion between the second and third walls and a disc portion disposed coaxially thereabout provided with a peripheral protruding coaxial ring portion, a knob exterior to the housing mounted on one end of the spindle, and a punch mounted to the base adjacent to the slot in the first wall including a plate mounted to the base of the housing provided with an elongated aperture therethrough normal to the first wall, said aperture having a width less than the thickness of the disc portion of the spindle and having an enlarged circular portion at the end thereof adjacent to the first wall with a diameter at least equal to the diameter of the ring portion of the disc portion of the spindle, and an arm pivotally mounted to the plate on the side of the aperture opposite the first wall of the housing and having a mechanical linkage extending exterior to the

---

2. The quoted portion was repeated in an address on April 16, 1964, to a joint meeting of the Philadelphia and American Patent Law Association at Philadelphia.

housing, said arm having a protruding punch portion aligned with the aperture in the plate and conforming to the shape of the aperture, whereby a card may be inserted into the slot in the first wall of the housing, the mechanical linkage actuated to punch the card, and the card removed and mounted on the spindle by disposing the aperture punched in the card by the punch about the disc portion of the spindle.

2. A device for storing and displaying cards comprising the elements of claim 1 wherein the punch is provided with means to limit the distance a card can be inserted into the slot of the first wall of the housing, said means having a surface located on a plane parallel to the first wall located on the opposite side of the circular portion of the aperture from the first wall and spaced from the circular portion by a distance less than the distance between the ring portion of the disc portion of the spindle and the cylindrical portion of the spindle.

3. A device for storing and displaying cards comprising the elements of claim 2 wherein the means to limit the distance a card can be inserted into the slot comprises a pair of spaced pins mounted normally to the plate on the plane spaced from the circular portion of the aperture by a distance less than the distance between the ring portion of the disc portion of the spindle and the cylindrical portion of the spindle.

4. A device for storing and displaying cards comprising the elements of claim 2 wherein the slot of the first wall of the housing is shorter than the length of the spindle and the punch confronts approximately the center of the slot.

5. A device for storing and displaying cards comprising the elements of claim 1 wherein the base of the housing is provided with an opening confronting the aperture in the plate of the punch.

6. A device for storing and displaying cards comprising the elements of claim 1 wherein the first wall of the housing is provided with an opening in the first wall, and the mechanical linkage of the arm comprises an elongated extension portion of the arm extending through the opening to the exterior of the housing.

7. A device for storing and displaying cards comprising the elements of claim 6 wherein the opening is rectangular in shape and extends from the central portion of the slot away from the base.

8. A device for storing and displaying cards comprising the elements of claim 1 in combination with a cover having a pair of generally semicircular parallel walls journaled about the spindle within the second and third walls, said cover having an arcuate portion secured to the periphery of the walls and a flange at one end extending outwardly therefrom, said flange abutting the first wall when the cover is closed and abutting the fourth wall when the cover is open, said cover rotating in opening to the interior of the housing, and the punch being totally contained between the first wall and the cover when the cover is in the open position.